[No. 81573-9.   En Banc.]
Argued October 28, 2008.      Decided May 7, 2009.

*In the Matter of the Interest of* ESTEVAN SILVA, JR.

*Jeanette M. Silva*, pro se.

*Lila J. Silverstein* (of *Washington Appellate Project*), for appellant.

*Robert M. McKenna*, Attorney General, *Maureen A. Hart*, Solicitor General, and *Sheila M. Huber* and *Stephen H. Hassett*, Assistants, on behalf of the State, amicus curiae.

¶1 C. JOHNSON, J. — This case involves the judicial authority to incarcerate a child for contempt of court for failing to comply with court orders entered in at-risk youth (ARY) proceedings. We have previously analyzed a juvenile court's exercise of its inherent contempt authority in *In re Dependency of A.K.*, 162 Wn.2d 632, 174 P.3d 11 (2007) (plurality opinion). *A.K.* dealt with dependency statutory proceedings, and we find, in all relevant respects, that case controls our analysis here. We accepted direct review of the juvenile court's decision imposing punitive sanctions for contempt of court and vacate that decision.[1]

## FACTS

¶2 Estevan Silva is an adjudicated at-risk youth. At Estevan's initial ARY hearing, the Yakima County juvenile court commissioner issued an ARY dispositional order re-

---

[1] This case is technically moot. However, we accepted review of this case because it, like *A.K.*, involves matters of continuing and substantial public interest. *A.K.*, 162 Wn.2d at 643. In deciding whether an issue of substantial public interest is involved, the court looks at three criteria: (1) the public or private nature of the question presented, (2) the desirability of an authoritative determination that will provide future guidance to public officers, and (3) the likelihood that the question will recur. *A.K.*, 162 Wn.2d at 643. As in *A.K.*, each of the three criteria are met. First, the public has a great interest in the protection of juveniles, and the authority of the court in these cases is a public matter. Second, a determination of how the court's inherent contempt power interacts with the statutory contempt scheme in ARY proceedings will provide useful guidance to juvenile court judges. Third, the juvenile court's exercise of inherent contempt authority in ARY proceedings is likely to recur.

quiring Estevan not to run away, to follow his parents' rules, to avoid drugs and alcohol, and to participate in a drug/alcohol evaluation as well as therapy and other services. Estevan failed to comply with the order. As a result, his mother petitioned the court to hold her son in contempt.

¶3 Due to Estevan's failure to follow the court's order, the juvenile court placed him in detention for at least five days. Subsequently, at Estevan's contempt hearing, the commissioner found him in contempt of court.[2] Additionally, the commissioner further found Estevan to have a problem with alcohol that required more than 28 days of basic treatment. At the hearing, Estevan "agree[d] [that] he need[ed] long-term treatment" and said that he would "cooperate with services."[3]

¶4 In sanctioning Estevan, the commissioner found statutory remedial contempt sanctions, under RCW 13.34-.165[4] and RCW 7.21.030(2)(e), which limit a youth's detention to a seven-day maximum, inadequate. Additionally, the commissioner found statutory punitive contempt sanctions, under RCW 7.21.040, unavailable. Due to the inadequacy or unavailability of statutory sanctions, the commissioner invoked his inherent contempt authority to impose a punitive sanction. His order provided in part:

> Estevan is sentenced to 45 days in detention, starting now, which are not subject to purge. . . . On May 17th . . . Estevan will be released from detention, with the remaining days suspended. After release, he will still be under the prior court orders. He must . . . participate in such inpatient treatment program as his parents are able to arrange. . . . Noncompliance can result in imposition of more of the postponed days. Six months after discharge from i[n]patient treatment, if Estevan is following court orders and remaining sober, the contempt will be purged and any remaining days will be stricken.

---

[2] This was the second time the juvenile court held Estevan in contempt for violation of an ARY dispositional order.

[3] Neither the court's order nor the report of proceedings explicitly states Estevan voluntarily agreed to participate in inpatient treatment.

[4] The correct authority is the ARY contempt statute, RCW 13.32A.250.

Clerk's Papers at 13-14. The court did not afford Estevan full criminal due process and refused to give him credit for time served in detention prior to the contempt hearing.

¶5 We accepted review of this case after receipt of the Court of Appeals, Division Three's order of certification seeking review of two issues involving the juvenile court's exercise of its inherent contempt authority to sanction Estevan. We requested that the State of Washington submit an amicus brief on the issues in this case. Because the resolution of the first issue involving the court's invocation of inherent contempt authority resolves this case, we need not reach the other issues raised by the appellant.

## ISSUE

¶6 Whether the juvenile court properly exercised its inherent contempt authority in an ARY proceeding when it imposed a punitive sanction without first finding statutory criminal contempt sanctions under RCW 7.21.040 inadequate.

## ANALYSIS

### *ARY Statutes*

¶7 As we recognized in *A.K.*, the legislature designed the ARY statutes, under chapter 13.32A RCW, the Family Reconciliation Act (FRA), to provide parents of at-risk youth with tools and services to assist them in raising and keeping their children safe. *A.K.*, 162 Wn.2d at 649; RCW 13.32A.010. ARY services were intended to provide legal processes by which parents who are experiencing problems with at-risk youth can request and receive assistance from juvenile courts in providing appropriate care, treatment, and supervision of the youth. RCW 13.32A.015. The legislature intends services under the FRA to be offered "on a voluntary basis whenever possible to children and their families and that the courts [are to] be

used as a last resort." RCW 13.32A.010. As we stated in *A.K.*, when discussing the ARY statutory purposes, ARY services are also partially aimed at providing interventions to keep children out of detention. *A.K.*, 162 Wn.2d at 649. In these ways, ARY services are consistent with the remedial nature of the juvenile court system, which focuses on rehabilitating and treating youth, rather than simply punishing children. *See State v. Schaaf*, 109 Wn.2d 1, 22, 743 P.2d 240 (1987).

¶8 As demonstrated by the language of the ARY statutes and our case law interpreting and applying them, the legislature enacted these provisions to help children. ARY statutes were intended to provide counseling, treatment, and available state resources to aid and protect at-risk youth, not to punish and jail them. Unfortunately, some children do not benefit from these available resources and will continue behavior that places them at risk. However, where statutory provisions are intended to treat and rehabilitate children, the last option a judge should consider is jail, where few, if any, legislatively created programs exist to help at-risk youth. As the remaining analysis demonstrates, only in the *rarest* of situations should incarceration as punishment be considered an option. Further, when such a punitive sanction is ordered, a court must provide full due process protections.

### Inherent Contempt Authority

¶9 A court's authority to impose sanctions for contempt is a question of law, which we review de novo. As a division of the superior courts, juvenile courts have inherent authority to impose contempt sanctions on youth. Juvenile court commissioners possess the same inherent power as a superior court judge. *A.K.*, 162 Wn.2d at 645-46.

¶10 "Because contempt of court is disruptive of court proceedings and/or undermines the court's authority, courts are vested with 'an inherent contempt authority, as a power necessary to the exercise of all others.' " *A.K.*, 162

Wn.2d at 645 (internal quotation marks omitted) (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994)). Inherent contempt power is separate from statutorily granted contempt power. The inherent contempt power is lodged permanently with the court, and the legislature may not, by its enactments, deprive the court of that power. The legislature may regulate that power, so long as such regulation does not render the court's contempt power ineffectual.

¶11  As *A.K.* makes clear, a juvenile court's use of its inherent contempt power is not unrestricted: "its use is appropriate only in limited situations." 162 Wn.2d at 647. Moreover, the Constitution circumscribes the exercise of inherent authority by requiring courts to provide appropriate due process protections to contemnors. Due process protections are determined by whether the sanction is remedial or punitive. *See A.K.*, 162 Wn.2d at 645-46.

*Contempt Sanctions*

¶12  A "[r]emedial sanction" is one "imposed for the purpose of coercing performance when the contempt consists of the omission or refusal to perform an act that is yet in the person's power to perform." RCW 7.21.010(3). "Remedial sanctions" are also known as "coercive" sanctions, and they are civil in nature.

¶13  In contrast, a "[p]unitive sanction" is "imposed to punish a past contempt of court for the purpose of upholding the authority of the court." RCW 7.21.010(2). Punitive sanctions are criminal in nature. When a court imposes a punitive contempt sanction, it must afford a contemnor full criminal due process. RCW 7.21.040. Statutory procedures establish the minimum due process protections a child must receive when a juvenile court uses its inherent authority to impose a punitive sanction.

¶14  To determine whether sanctions are punitive or remedial, the courts look not to the " 'stated purposes of a

contempt sanction,' but whether it has a coercive effect—
whether 'the contemnor is able to purge the contempt and
obtain his release by committing an affirmative act.' " *A.K.*,
162 Wn.2d at 646 (quoting *Bagwell*, 512 U.S. at 828).

¶15 In this case, neither party disputes that the
commissioner exercised his inherent contempt authority
punitively: the juvenile court imposed a 45-day suspended
sentence, which far exceeded the 7-day statutory remedial
contempt sanction maximum under RCW 7.21.030(2)(e)
and chapter 13.32A RCW, and the court conditioned the
purge of that punitive sanction on submission to inpatient
treatment for more than 28 days and compliance with all
other court orders.[5] Further, the State correctly concedes
that *A.K.*'s ruling regarding dependency contempt proceed-
ings should apply to the ARY contempt proceedings.

### A.K.

¶16 At the time the court sanctioned Estevan, *State v.
A.L.H.*, 116 Wn. App. 158, 64 P.3d 1262 (2003) was good law.
Similar to Estevan's case, *A.L.H.* involved an ARY order. In
that case, the juvenile court held that remedial, but not
punitive, statutory contempt sanctions may be imposed on
a juvenile for violating an ARY order. *A.L.H.*, 116 Wn. App.
at 164.

¶17 In *A.K.*, we disagreed with *A.L.H.* on the above
issue, though we did not explicitly overturn the case on that
point. *A.K.* involved a dependency contempt proceeding
wherein the court punitively sanctioned two juveniles to 30
days in detention without affording them full criminal due
process pursuant to RCW 7.21.040. In contrast to *A.L.H.*, in
*A.K.* we held that statutory punitive contempt sanctions

---

[5] Inpatient treatment is an invalid purge condition on an otherwise punitive
sanction. Purge conditions are valid only if they are in the contemnor's capacity to
immediately purge. *In re Interest of J.L.*, 140 Wn. App. 438, 447, 166 P.3d 776
(2007). Here, it is not in Estevan's capacity to immediately purge his contempt.
His admission into a treatment facility is outside of his control: his parents must
arrange the treatment, a treatment facility must have availability, and that
facility must accept Estevan as a patient.

were available to juvenile courts. However, we also held that before a juvenile court may exercise its inherent authority to impose a punitive sanction in a dependency proceeding, it must first find all statutory contempt sanctions inadequate. *A.K.*, 162 Wn.2d at 652 (plurality), 653 (concurrence).

¶18 In reaching our conclusion in *A.K.*, we found that the ARY and dependency civil contempt provisions were substantially identical, were amended by the same legislation, and that the general remedial contempt statute by its terms applies equally to ARY and dependency cases. Both ARY and dependency coercive contempt statutes state:

> [f]ailure by a party to comply with an order entered under this chapter is civil contempt of court as provided in RCW 7.21.030(2)(e).

*A.K.*, 162 Wn.2d at 648 (quoting RCW 13.32A.250(2) and RCW 13.34.165(1)). In 1998, both statutes were amended by the same legislation. LAWS OF 1998, ch. 296, §§ 35-38. Considering the statutes' similarity in texts and legislative history, we interpret the ARY statutory language as we do the identical language in the dependency contempt statute. Therefore, *A.K.*'s holding applies to Estevan's ARY proceeding.

¶19 Accordingly, in Estevan's case, because the commissioner failed to find all statutory contempt remedies inadequate before exercising his inherent power to impose a punitive contempt sanction on the child, we hold the exercise of his inherent contempt power was premature and vacate Estevan's contempt order.

¶20 While the parties agree that *A.K.* applies to this case, the State seeks clarification of and guidance on several points stemming from *A.K.* The State asks for clarification on two related points in *A.K.*: (1) whether the court's use of inherent power to impose a coercive contempt sanction requires finding all statutory sanctions inadequate, and (2) whether a finding of inadequacy means that

each type of sanction must have been tried and proved ineffective. Amicus Br. at 14-16.

¶21 From the State's perspective, the plurality and concurring opinions in *A.K.* have generated some confusion about what a court is required to do before resorting to inherent contempt sanctions. The plurality holds that a juvenile court possesses the inherent authority to impose remedial or punitive sanctions; "[h]owever, before exercising that power, the court must specifically find all statutory contempt remedies inadequate." *A.K.*, 162 Wn.2d at 652 (emphasis added). The concurrence "disagree[s]" "to the extent that [the plurality] may be read to require a dependency court to resort to criminal contempt before exercising its inherent authority to impose a coercive contempt sanction." *A.K.*, 162 Wn.2d at 653 (Madsen, J., concurring).

¶22 As *A.K.* explicitly states, a juvenile court is required to find *all* statutory contempt sanctions, remedial and punitive, inadequate before resorting to its inherent power. *A.K.*, 162 Wn.2d at 652. Further, that finding of inadequacy requires a juvenile court to try all statutory contempt sanctions and specifically find them ineffective before a court may exercise its inherent contempt powers to sanction a youth.

¶23 In clarifying these points, we emphasize that remedial sanctions are the favored juvenile contempt sanction. As we have long held, " '[o]nly under the most egregious circumstances should the juvenile court exercise its contempt power to incarcerate a status offender in a secure facility.' " *A.K.*, 162 Wn.2d at 647 (quoting *State v. Norlund*, 31 Wn. App. 725, 729, 644 P.2d 724, *review denied*, 98 Wn.2d 1013 (1982)); *see also In re Pers. Restraint of King*, 110 Wn.2d 793, 802, 756 P.2d 1303 (1988). Consistent with this long-standing position and the FRA's aim of keeping children out of detention, juvenile courts should rarely, if ever, impose punitive contempt sanctions on at-risk youth. As we stated in *A.K.*, if punitive incarceration is necessary, " 'the record should demonstrate that *all less restrictive alternatives have failed.*' " *A.K.*, 162 Wn.2d at 647 (empha-

sis added) (quoting *Norlund*, 31 Wn. App. at 729). Punitive incarceration should be used as a last resort.

¶24 While the State agrees that we have determined that a juvenile court should use punitive sanctions sparingly, it contends that *A.K.* did not determine what due process protections are required when a court uses its inherent authority to impose a punitive sanction. In such an instance, the State argues that a court does not have to grant a child the full criminal due process protections established in RCW 7.21.040 because a court's inherent contempt power, unlike a court's statutory contempt power, does not depend on a legislative grant of authority. *See* Amicus Br. at 16-20.

¶25 Although the State is correct that inherent authority does not derive from the legislature, due process constrains the exercise of both statutory contempt authority and inherent contempt authority. *See A.K.*, 162 Wn.2d at 646. As we stated in *A.K.*, before a juvenile court imposes a punitive contempt sanction, full criminal due process protections attach. *A.K.*, 162 Wn.2d at 646 n.4 (citing *Bagwell*, 512 U.S. at 833; *see also King*, 110 Wn.2d at 800). In RCW 7.21.040, the legislature established the due process protections and procedures for imposing statutory punitive contempt sanctions. When a statutory procedure exists for imposing a particular type of sanction, a court exercising its inherent contempt power to impose that type of sanction must, at minimum, follow those statutory procedures. Thus, the processes set out in RCW 7.21.040 establish the minimum due process a child must receive when the court imposes a punitive sanction.

¶26 Finally, the State seeks guidance as to what a juvenile court should do after it has found all statutory contempt sanctions inadequate and has properly invoked its inherent power. Because the legislature, not the judiciary, establishes the laws and procedures for juveniles' treatment and rehabilitation, we can provide only limited guidance.

¶27 In providing guidance, we acknowledge that parents of at-risk youth often face difficult challenges in raising and keeping their children safe, and we encourage struggling parents to use ARY services and juvenile court processes to assist them. We further recognize that courts face challenges in rehabilitating and treating youth given the State's limited resources. However, courts do not make public policy determinations regarding the sentencing and treatment of youth. That is distinctly the province of the legislature. Therefore, we confine our guidance to a summary of our holdings: a juvenile court's inherent power is very limited, punitive sanctions should be utilized as a last resort, and existing statutory procedures must guide the judiciary in their determination of both the proper sanction and the due process protections necessary for the imposition of that sanction.

## CONCLUSION

¶28 We hold that a juvenile court in an ARY proceeding must find all statutory contempt sanctions inadequate before it may exercise its inherent contempt power to sanction a youth. In this case, the juvenile court failed to do so. Accordingly, we vacate Estevan's inherent contempt order.

ALEXANDER, C.J., and SANDERS, CHAMBERS, OWENS, J.M. JOHNSON, and STEPHENS, JJ., concur.

¶29 MADSEN, J. (concurring in result) — Although I concur in the result reached by the majority, I write separately because the majority mischaracterizes the holding in *In re Dependency of A.K.*, 162 Wn.2d 632, 174 P.3d 11 (2007) (plurality opinion). Indeed, through its mischaracterization, the majority actually overrules our plurality decision without even acknowledging what it has done.

### Discussion

¶30 In *A.K.*, five justices agreed that a juvenile court is not required to find statutory criminal contempt sanctions

inadequate before fashioning a remedial and coercive sanction in a dependency proceeding. In *A.K.*, Justice Bridge agreed with my concurrence that a juvenile court is required to find the statutory remedies for criminal contempt inadequate before using its inherent power to *punish* a juvenile for violating a court order, but that such a finding is not required before exercising its inherent power to impose a remedial, coercive contempt sanction. Two justices agreed with Justice Owens' dissent, which stated that a juvenile court may exercise its inherent authority to order a coercive detention after finding the civil contempt statute inadequate without first exhausting the criminal statutory remedy.

¶31 Read together, the concurrence and dissent in *A.K.* do not support the majority's assertion here that "*A.K.* explicitly states, a juvenile court is required to find *all* statutory contempt sanctions, remedial and punitive, inadequate before resorting to its inherent power." Majority at 144.

¶32 We accepted review in this case to clarify, not overrule, our decision in *A.K.* We should reaffirm our decision in *A.K.* to make it clear that a juvenile court is required to find only statutory remedial contempt remedies inadequate before using the court's inherent coercive contempt power to hold a dependent or at risk youth (ARY) in contempt and to fashion a coercive sanction. Such a holding would reaffirm that a juvenile need not face criminal prosecution for contempt unless *all coercive attempts* to gain a juvenile's compliance have failed. We should also make it clear that before exercising its inherent power to *punish* a youth for contemptuous conduct, the juvenile court should find both the criminal and remedial statutory contempt remedies inadequate. As I noted in my concurring opinion in *A.K.*, criminal contempt and remedial contempt sanctions are aimed at different concerns, and a judge who is attempting to coerce compliance with a court order will have no reason to consider the adequacy of criminal contempt sanctions.

¶33 ARY proceedings are intended to assist parents in protecting their children from harm, and the best interest

148

of the child is central. The legislature expressly stated, "[i]t is the intent of the legislature to avoid the bringing of criminal charges against youth who need the guidance of the court rather than its punishment." LAWS OF 1998, ch. 296, § 35. Forcing children into criminal proceedings that could result in a criminal record must surely be done only after all coercive efforts, including the court's inherent coercive contempt power, have failed.

¶34 Finally, in this case the juvenile court sentenced Estevan Silva, Jr., to 45 days in detention, which the court stated could be suspended on the condition Silva submit to an in-patient treatment program. As Silva points out, however, there are alternatives to incarceration that are available by statute, including evaluation and treatment in secure facilities under RCW 70.96A.140 and .245 (chemical dependency involuntary treatment act) and RCW 71.34.600 (parent-initiated mental health involuntary treatment act). Incarcerating a juvenile before fully exploring such alternatives is not a proper use of the court's inherent contempt powers, criminal or remedial.

FAIRHURST, J., concurs with MADSEN, J.