[No. 40558-0-II.   Division Two.   November 22, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. C.B.,[†] *Appellant*.

[†] Under RAP 3.4, this court changes the title of the case to the appellant's initials. The ruling uses initials to protect the appellant's rights to confidentiality.

90

*Patricia A. Pethick*, for appellant.

*Robert M. McKenna, Attorney General*, and *Scott E. Michael, Assistant*, for respondent.

¶1 PENOYAR, C.J. — The trial court found CB not guilty of custodial assault by reason of insanity and committed her to Western State Hospital. At the request of her treating psychiatrist, the superior court subsequently entered two orders—one on September 1, 2009, and another on March 9, 2010—authorizing the involuntary administration of anti-psychotic medications to CB. In this appeal, CB argues that the March 9 order is invalid because chapter 10.77 RCW does not authorize the involuntary medication of criminally insane individuals in the custody of the Department of Social and Health Services (Department).[1] Holding that RCW 10.77.120(1) provides this statutory authority, we affirm.

---

[1] We use the phrase "criminally insane" as a term of art to refer to individuals who are acquitted of their crimes by reason of insanity and committed to a state mental hospital under RCW 10.77.110(1).

## FACTS

¶2 On April 26, 2007, CB, a mentally ill individual,[2] assaulted three correctional officers at the Thurston County jail. The State charged her with three counts of custodial assault,[3] and she entered a plea of not guilty by reason of insanity. The parties stipulated that CB met the legal definition of "insanity" at the time of the assaults. On March 13, 2008, the trial court entered a judgment of acquittal by reason of insanity and ordered CB to "be hospitalized and committed to a state mental hospital pursuant to the terms of RCW Chapter 10.77." Clerk's Papers (CP) at 16.

¶3 On August 20, 2009, CB's psychiatrist at Western State Hospital, Dr. William Richie, petitioned the superior court for an order of involuntary treatment with antipsychotic medication. Dr. Richie's petition alleged that CB had stopped taking her medications because she thought they were unnecessary and made her gain weight. Dr. Richie stated that treatment with antipsychotic medication would reduce the likelihood that CB would harm herself or others. He concluded that she would continue to suffer a substantial deterioration in routine functioning resulting in serious harm if she did not receive such treatment.[4]

¶4 The Department moved for limited intervention in the proceeding based on its responsibility to provide "adequate care and individualized treatment" to criminally insane individuals in state institutions. *See* former RCW

---

[2] CB's mental disorders include a mood disorder not otherwise specified, schizoaffective disorder, psychotic disorder not otherwise specified, post-traumatic stress disorder, and borderline personality disorder.

[3] A violation of RCW 9A.36.100(1).

[4] Because CB challenges only the statutory basis for the entry of the involuntary medication orders—and not the trial court's reasons for doing so—we do not describe the deterioration of CB's routine functioning or explain how she was at risk to harm herself or others.

10.77.120 (LAWS OF 2000, ch. 94, § 15). In a supporting memorandum, the Department recommended that the superior court employ the procedures in RCW 71.05.217(7)[5] to protect CB's due process rights.

¶5 At a hearing on the petition, the Department argued, in relevant part, that the superior court had jurisdiction to order CB's involuntary medication based on the court's "continuing jurisdiction over her care" under former chapter 10.77 RCW. Report of Proceedings (Sept. 1, 2009) at 7. CB responded, in relevant part, that the superior court could not authorize involuntary medication because chapter 10.77 RCW did not provide the superior court with explicit statutory authority to order the involuntary medication of the criminally insane. She argued that the legislature had provided statutory authorization for involuntary medication in the context of competency restoration but not for involuntary medication of criminally insane individuals in state mental institutions. *See* RCW 10.77.092, .093.

¶6 On September 1, the superior court entered an order granting the Department's motion for limited intervention and authorizing the Department to administer antipsychotic medications to CB for up to 180 days. Among its written findings and conclusions, the superior court entered the following conclusion of law: "Under Article IV, § 6 [of the state constitution] and RCW 10.77, this Court has subject matter jurisdiction and the authority to authorize involuntary administration of antipsychotic medication to the Defendant." CP at 41. CB did not appeal the superior court's September 1 order.

¶7 On February 22, 2010, about a week before the September 1 order expired, Dr. Richie again petitioned the

---

[5] RCW 71.05.217 enumerates the rights of mentally ill individuals who are "involuntarily detained, treated in a less restrictive alternative course of treatment, or committed for treatment and evaluation" in a state institution under the provisions of chapter 71.05 RCW. Under RCW 71.05.217(7), these individuals have the right to refuse the administration of antipsychotic medications unless a court of competent jurisdiction orders involuntary medication following specific standards and procedures. It is undisputed that CB received all the procedural rights under RCW 71.05.217(7)(c) at the September 1, 2009 and March 9, 2010 hearings.

superior court for an order of involuntary medication, and the Department again moved to intervene. In their briefing, and at the subsequent hearing before a different superior court judge, the parties again debated whether the superior court had authority to order the involuntary medication of criminally insane individuals. Additionally, the Department argued that CB was collaterally estopped from relitigating this issue because CB did not appeal the superior court's earlier conclusion of law that it had jurisdiction to enter the order.

¶8 On March 9, the superior court entered an order granting the Department's motion for limited intervention and authorizing the Department to administer antipsychotic medications to CB for another 180 days. The superior court entered a written conclusion that collateral estoppel precluded CB from relitigating the court's earlier ruling that it had subject matter jurisdiction and the authority to order the involuntary administration of antipsychotic medication.

¶9 CB timely appealed the entry of the March 9 involuntary medication order, which would expire on September 5, 2010.

## ANALYSIS

I. Mootness

¶10 Because CB appeals an order that expired over a year ago, this case is moot. *See State v. Gentry*, 125 Wn.2d 570, 616, 888 P.2d 1105 (1995) ("A case is moot if a court can no longer provide effective relief."). Nevertheless, we agree with the Department that this case involves an issue of "substantial public interest" that warrants appellate review. *See State v. Watson*, 155 Wn.2d 574, 578, 122 P.3d 903 (2005) (this court may decide a moot case involving an issue "of substantial public interest").

¶11 Generally, we examine three criteria when deciding whether a moot case involves an issue of substan-

tial public interest: (1) the public or private nature of the question presented, (2) the desirability of an authoritative determination that will provide future guidance to public officers, and (3) the likelihood that the question will recur. *In re Interest of Silva*, 166 Wn.2d 133, 137 n.1, 206 P.3d 1240 (2009). First, the Department's ability to petition for the involuntary medication of criminally insane individuals committed to state institutions is a matter of public concern. *See, e.g., In re Det. of C.M.*, 148 Wn. App. 111, 115, 197 P.3d 1233 ("Cases involving mental health procedures . . . frequently present exceptions to the mootness doctrine."), *review denied*, 166 Wn.2d 1012 (2009). It is an issue that implicates an individual's rights to refuse medical treatment and the State's interest in providing effective medical treatment to individuals in its care. Second, as the Department notes, similar issues have arisen in at least two superior court cases and in one unpublished Division One case[6] in the last two years, suggesting that this issue will continue to recur. Finally, because there are no binding court decisions on this issue, a decision on the merits will provide future guidance for public officers.[7]

## II. STATUTORY AUTHORITY TO ORDER INVOLUNTARY MEDICATION

¶12 Before proceeding further, we pause to consider the legal nature of CB's challenge. CB states that she does not challenge the superior court's subject matter jurisdiction but, rather, "whether the trial court under its jurisdictional auspices ha[d] the statutory authority" to order the Department to medicate her over her objection. Reply Br. at 5. Although not entirely clear, it appears that CB does not assert that superior courts lack subject matter jurisdiction

---

[6] *Dep't of Soc. & Health Servs. v. Carlstrom*, noted at 156 Wn. App. 1047 (2010).

[7] Despite its concession that this case involves an issue of substantial public interest that warrants appellate review, the Department asks us, somewhat incongruously, to affirm the trial court's conclusion that collateral estoppel precludes CB from asserting that the trial court lacked statutory authority to order her involuntary medication. We decline to do so. Instead, we address this issue of substantial public interest on the merits, as both parties request.

to consider whether a criminally insane individual is receiving adequate care and individualized treatment in a state institution; rather, she challenges the Department's statutory authority to petition for and to provide a specific form of individualized treatment—namely, the administration of antipsychotic medications to an individual against her will. We limit our review to resolving this narrow question.[8]

¶13 Because we are considering a moot issue of recurring public interest, we analyze the current statutory language rather than the statutory language that was in effect at the time that Dr. Richie filed each of his petitions for involuntary medication. Statutory interpretation is a question of law that we review de novo. *State v. Gonzales Flores*, 164 Wn.2d 1, 10, 186 P.3d 1038 (2008). Our primary objective when interpreting a statute is to ascertain and give effect to the legislature's intent. *State v. Kintz*, 169 Wn.2d 537, 547, 238 P.3d 470 (2010). To determine the legislature's intent, we begin by examining the statute's plain language, according it its ordinary meaning. *Kintz*, 169 Wn.2d at 547. We may discern the plain meaning of nontechnical statutory terms from their dictionary definitions. *Kintz*, 169 Wn.2d at 547.

¶14 The current version of RCW 10.77.120 reads in relevant part, "The secretary[9] shall *provide adequate care and individualized treatment* to persons found criminally insane at one or several of the state institutions or facilities under the direction and control of the secretary." RCW 10.77.120(1) (emphasis added). In our view, the legislature's command that the secretary "provide adequate care and individualized treatment" to criminally insane individuals in state institutions constitutes statutory authorization for the secretary to administer medication involuntarily to criminally insane individuals who are under the

---

[8] Accordingly, we decline to address the parties' arguments related to the issue of superior court jurisdiction under article IV, section 6 of the state constitution.

[9] "Secretary" means the secretary of the Department of Social and Health Services or his or her designee. RCW 10.77.010(21).

secretary's control. The dictionary defines "treatment" as "the action or manner of *treating a patient medically* or surgically" and "medication" as *"treatment* with a medicament." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1402, 2435 (2002) (emphasis added). Medication, in other words, is a form of treatment that may be appropriate to a specific individual depending on his or her medical circumstances. As such, it clearly falls within the statute's reach. Accordingly, CB's argument that the Department lacked statutory authority to treat her with antipsychotic medications fails.[10]

¶15 CB asserts that because the legislature explicitly mentions "involuntary medication" as a form of treatment in RCW 10.77.092 and RCW 10.77.093—statutes that address the issue of competency restoration—the legislature intended to authorize involuntary medication only in these "two limited circumstances." Appellant's Br. at 14. We disagree.

¶16 RCW 10.77.092 enumerates a list of crimes that are "serious offense[s] per se" for purposes of "determining whether a court may authorize involuntary medication for the purpose of competency restoration" as well as standards for determining whether other nonenumerated crimes amount to "serious offense[s]." RCW 10.77.092(1), (2). RCW 10.77.093 states that when a trial court must determine whether to order involuntary medication for the purpose of competency restoration or competency maintenance, the court shall inquire into the defendant's civil commitment status. The legislature enacted both statutes in 2004 after the United States Supreme Court's decision in *Sell v.*

---

[10] Any individual that the Department seeks to treat with involuntary medication against that individual's will must be afforded adequate due process. *See, e.g., Washington v. Harper*, 494 U.S. 210, 221-22, 110 S. Ct. 1028, 108 L. Ed. 2d 178 (1990) (a mentally ill prisoner "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs" under the Fourteenth Amendment's due process clause). We emphasize that the issue of whether the State afforded CB adequate due process by employing the procedures in RCW 71.05.217(7) before involuntarily medicating her is not before us.

*United States*, 539 U.S. 166, 169, 123 S. Ct. 2174, 156 L. Ed. 2d 197 (2003), a case explaining the circumstances in which the State can administer antipsychotic drugs involuntarily to a mentally ill criminal defendant "in order to render that defendant competent to stand trial for serious, but nonviolent, crimes." *See* Laws of 2004, ch. 157, §§ 1, 3, 4. When the legislature enacted RCW 10.77.092 and RCW 10.77.093, it adopted a statement of purpose, which reads in relevant part:

> The legislature also finds that the decision in [*Sell*] requires a determination whether a particular criminal offense is "serious" in the context of competency restoration and the state's duty to protect the public. The legislature further finds that, in order to adequately protect the public and in order to provide additional opportunities for mental health treatment for persons whose conduct threatens themselves or threatens public safety and has led to contact with the criminal justice system in the state, the determination of those criminal offenses that are "serious" offenses must be made consistently throughout the state. In order to facilitate this consistency, the legislature intends to determine those offenses that are serious in every case as well as the standards by which other offenses may be determined to be serious. The legislature also intends to clarify that a court may, to the extent permitted by federal law and required by the *Sell* decision, inquire into the civil commitment status of a defendant and may be told, if known.

Laws of 2004, ch. 157, § 1. Based on this clear statement of purpose, we agree with the State that the legislature's intent when it enacted RCW 10.77.092 and RCW 10.77.093 was "to account for *Sell*, not to exclude involuntary medication as an option" for criminally insane individuals in the

Department's custody. Resp't's Br. at 18. Accordingly, CB's argument fails.

¶17  We affirm.[11]

JOHANSON, J., concurs.

¶18  VAN DEREN, J. (concurring) — I write separately, since I concur with the majority's opinion, only to point out that the legislative amendments to former RCW 10.77.110(1) (2000) created an ambiguity regarding the authority of the Washington State Department of Social and Health Services (Department) to medicate the criminally insane and those found not guilty by reason of insanity. Under the amendments, the legislature's intent regarding how the Department is to involuntarily medicate those committed to its care as criminally insane and those found not guilty by reason of insanity for criminal offenses under RCW 10.77.110(1) is no longer as clear as it should be.

¶19  Until the legislature's removal of language in former RCW 10.77.120(1) (2000) that stated that criminally insane individuals "shall be under the custody and control of the [Department's] secretary to the same extent as are other persons who are committed to the [Department's] secretary's custody," the statute appeared to allow the Department to proceed under RCW 71.05.217(7) when it requested authority to involuntarily medicate the criminally insane. And the legislative history of the 2010 deletion does not shed light on the purpose behind the change, nor did further 2010 amendments to chapter 10.77 RCW provide for a procedure applicable to the criminally insane for involuntary medication.

¶20  Thus, C.B's argument that the legislature must intend that the criminally insane not be involuntarily medicated may be supported by the lack of reference to

---

[11] Because CB's statutory argument fails on the merits, her challenges to specific findings of fact and conclusions of law also fail.

involuntary medication administration for those individuals and their exclusion from the procedures the Department can use for those committed under RCW 71.05.217(7).

¶21 Nevertheless, I concur in the result reached in this case because of the danger to self or others that a criminally insane person may pose, both as a matter of public and individual safety, and my refusal to believe or interpret the legislature's actions as intending to allow such danger to go untreated by the Department if involuntary medication is the best treatment alternative for the individual.

Review denied at 173 Wn.2d 1027 (2012).