# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Detention of: | No.  50077-9-II |
| AUSAGETALITAMA SHELL FAGA, | |
| Appellant. | PUBLISHED OPINION |

LEE, J. — Ausagetalitama S. Faga appeals the superior court's order denying his motion to purge his contempt.  Because Faga has not proven his inability to comply with the superior court's original order to participate in evaluations with the State's experts, the superior court did not err in denying Faga's motion to lift the contempt sanctions and set a trial date.  We affirm the superior court's order denying Faga's motion to purge his contempt; however, we remand for the superior court to consider the underlying issues Faga raises.

### FACTS

In 2012, the State filed a petition seeking Faga's civil commitment as a sexually violent predator (SVP) under chapter 71.09 RCW.  The State filed a motion to compel Faga to participate in evaluations as required by RCW 71.09.050.[1]  In 2013, the superior court ordered Faga to participate in evaluations with the State's experts.

---

[1] RCW 71.09.050(1) states, in relevant part,

> The prosecuting agency shall have a right to a current evaluation of the person by experts chosen by the state.  The judge may require the person to complete any or

On January 31, 2014, the State filed a motion for contempt based on Faga's refusal to participate in evaluations required by the State's expert, Dr. Harry Hoberman. The superior court found that Faga intentionally disobeyed its earlier order to participate in evaluations. Based on Faga's intentional disobedience, the court found Faga in contempt of court. The court ordered that Faga could purge his contempt by "fully complying" with the court's order requiring Faga to participate in evaluations with the State's experts and by "meeting with Dr. Hoberman, cooperating with the evaluation, submitting to a clinical interview and such psychological and physiological testing as deemed appropriate by Dr. Hoberman." Clerk's Papers (CP) at 172. As a sanction for the contempt, the court stayed Faga's civil commitment trial until he purged the contempt.

On August 18, 2016, Faga filed a motion to lift the contempt sanctions and set a trial date. Faga stated that he had attempted to participate in the evaluations but, because he would not sign the informed consent waivers, the experts refused to conduct the evaluations. Faga argued that the waivers required him to waive other important rights and, therefore, he should not have to sign them. Faga also argued that "he cannot actually purge his remaining conditions of contempt because the State is withholding that opportunity until he signs their extrajudicial waivers." CP at 190. Faga asserted that he would participate in the evaluations as long as he did not have to sign any waivers. The only relief Faga requested was lifting the contempt sanctions and setting a trial date.

---

all of the following procedures or tests if requested by the evaluator: (a) A clinical interview; (b) psychological testing; (c) plethysmograph testing; and (d) polygraph testing. The judge may order the person to complete any other procedures and tests relevant to the evaluation.

The superior court concluded that Faga "has not met his burden of producing persuasive, credible evidence that he does not have the ability, through no fault of his own, to comply with the court's earlier order." CP at 299. The court denied Faga's motion to lift the contempt sanctions.

Faga filed a motion for discretionary review with this court. We granted Faga's motion for discretionary review.

## ANALYSIS

Faga argues that the superior court erred by denying his motion to lift the contempt sanctions. We disagree.

A. LEGAL PRINCIPLES

We review the superior court's conclusion regarding whether Faga can comply with the condition set by the court to purge the contempt sanction for an abuse of discretion. *Moreman v. Butcher*, 126 Wn.2d 36, 40, 891 P.2d 725 (1995); *see also King v. Dep't of Soc. & Health Svcs.*, 110 Wn.2d 793, 802-03, 756 P.2d 1303 (1988) ("At what point incarceration for civil contempt no longer serves a coercive purpose is a matter left to the sound discretion of the trial judge to be decided on a case-by-case basis."). "An abuse of discretion is present only if there is a clear showing that the exercise of discretion was manifestly unreasonable, based on untenable grounds, or based on untenable reasons." *Moreman*, 126 Wn.2d at 40.

A civil contempt sanction is valid only if it is remedial as opposed to punitive. *See In re the Interest of Silva*, 166 Wn.2d 133, 141-42, 206 P.3d 1240 (2009). A remedial sanction is one imposed to coerce performance. RCW 7.21.010(3); *Silva*, 166 Wn.2d at 141.

One requirement of a remedial sanction is that the sanction is within the contemnor's power to perform. RCW 7.21.030(2). Civil contempt sanctions lose their coercive effect when the contemnor no longer has the ability to comply with the court's order. *King*, 110 Wn.2d at 804. Once it becomes clear that the contemnor no longer has the ability to comply, the court must lift the contempt sanctions. *Id*.

Similarly, a contempt order must contain a purge condition allowing the contemnor to purge the sanction through an affirmative act. *Silva*, 166 Wn.2d at 141-42. The contemnor must have the ability to satisfy the purge condition. *In re Structured Settlement Payment Rights of Rapid Settlements, Ltd.*, 189 Wn. App. 584, 613, 359 P.3d 823 (2015), *review denied*, 185 Wn.2d 1020 (2016).

"[T]he law presumes that one is capable of performing those actions required by the court." *King*, 110 Wn.2d at 804. The inability to comply with the court's order is an affirmative defense. *Id*. The contemnor bears the burden of proving his or her inability to comply with credible evidence. *Id*. "These principles extend also to situations where the failure to comply with an order may be constitutionally protected." *Id.* at 804-05. The merits of a constitutional claim must be determined initially by the trial court. *Id.* at 805.

B.    ABILITY TO COMPLY WITH PURGE CONDITIONS

Faga makes three arguments to support his contention that the superior court erred by denying his motion to lift the contempt sanctions and set a trial date: (1) he is unable to comply with the purge condition because compliance is conditioned on the actions of third parties, (2) the court improperly modified the purge conditions by requiring Faga to sign the waivers, and (3) the

court cannot create a purge condition that violates Faga's rights. But Faga's arguments do not support his requested remedy. Here, because Faga has failed to demonstrate that he is unable to comply with the court's purge condition, the superior court did not abuse its discretion by denying Faga's motion to lift the contempt sanction.

1.      Compliance Conditioned on Third Party Action

Faga argues that the superior court improperly based Faga's ability to purge his contempt on the actions of third parties. Faga relies on *In re the Interest of M.B.*, 101 Wn. App. 425, 3 P.3d 780 (2000), to support his argument.

In *M.B.*, the trial court required the juvenile contemnor to enroll and be accepted into a treatment program in order to purge her contempt. *Id*. at 459. Division One noted that "[t]he contemnor must carry the keys of the prison door in her own pocket." *Id.* at 460. The court noted that, while the contemnor could control whether to enroll in a program, she could not control whether she was accepted. *Id*. When a contemnor cannot control whether to purge the contempt because purging the contempt is dependent on the actions of third parties, outside of the contemnor's control, the purge condition is inappropriate. *Id*.

But Faga's purge condition is distinguishable from the condition in *M.B.* Here, Faga's ability to purge the contempt remains entirely in Faga's control. All Faga has to do is to sign the required forms and the State's experts will perform the evaluations. The fact that Faga does not want to sign the forms does not mean that he no longer has the ability to purge his contempt.

Accordingly, Faga has failed to demonstrate that the purge condition is improperly dependent on the actions of third parties.[2]

2.      Improper Modification of Purge Condition

Faga also argues that the superior court improperly modified Faga's purge condition by adding the requirement that he sign waivers. Again relying on *M.B.*, Faga asserts "[a] purge condition 'is not subject to ongoing modification and increasing onerousness.' " Br. of Appellant at 12 (quoting *M.B.*, 101 Wn. App. at 462).

In *M.B.*, another juvenile was found in contempt and was required to write a 15-page paper explaining why he had failed to follow the court's order and how he would comply in the future in order to purge his contempt. 101 Wn. App. at 461. The trial court rejected the juvenile contemnor's first paper because the paper did not specifically address how the juvenile contemnor's actions affected his mother and caused her to lose her housing. *Id.* In declaring the new purge condition unlawful, the *M.B.* court explained,

> [I]n rejecting [the juvenile contemnor's] first paper as inadequate, the court imposed content requirements not originally described. The purge condition is not subject to ongoing modification and increasing onerousness. The court has discretion to determine whether the contemnor has satisfied the purge condition, but the court must state its expectations with sufficient clarity to communicate what is required. Here, the court's imposition of additional requirements not originally included as part of the condition was punitive in effect and purpose and, therefore, unlawful.

---

[2] Faga also argues that the superior court's order violates due process by subjecting him to indefinite commitment based solely on a finding of probable cause. However, this is the fundamental truth underlying every contempt order subjecting a contemnor to incarceration. This is why "[t]he contemnor must carry the keys of the prison door in [his] own pocket." *M.B.*, 101 Wn. App. at 460. As explained above, Faga continues to be in control of whether his contempt is purged. Therefore, the superior court's order does not violate due process by subjecting Faga to indefinite commitment.

*Id.* at 462.

And even if the superior court had improperly modified the purge condition, the *modification* is unlawful—not the original condition. *Id.* Here, that would mean requiring Faga to sign the waivers would have been unlawful, and the appropriate remedy would be for the superior court to intervene and enter an order requiring the evaluations to take place without the waivers, which Faga notes had occurred in other cases.

Moreover, this is not a situation like in *M.B.* where the contemnor performed the task requested by the trial court and the trial court rejected the effort because it did not meet undisclosed expectations. Here, Faga refused to sign the waiver forms required by the evaluators in order to allow the evaluations to take place. The waivers were not a modification or an additional requirement imposed by the court. Thus, Faga's argument that the superior court erred by not lifting his contempt sanctions because it improperly modified his purge condition by adding requirements fails.

3. Violation of Rights

Faga argues that the waivers are improper because they violate his First Amendment rights by compelling him to state the evaluations are voluntary. He also argues that the waivers require him to disclose information protected by attorney-client privilege. And Faga argues that the waivers require him to waive his rights to discovery, to seek redress for negligence or malfeasance, and to limit the distribution of private information. However, Faga did not specifically ask the superior court to address the merits of these claims, nor did he request a remedy that was

appropriate if the court were to find that the waivers infringed upon his rights. He only asked the court to lift his contempt sanctions and set a trial date.

Faga admits that he is capable of complying with the superior court's order by participating in the evaluations; he is refusing to do so because he believes that the waivers he is being asked to sign infringe upon his rights. But Faga's remedy for that complaint is to ask the superior court to address the specific issues he has with the waivers, not to ask that the contempt be lifted. *See id.*at 805 (holding that whether the court's order violated the contemnor's constitutional rights is properly addressed by the trial court). Faga has not sought court intervention to allow the evaluations to proceed without waivers.

Also, while failure to comply with an order may be constitutionally protected, the contemnor still bears the burden of proving his rights exceed the interests protected by the court's order to establish an inability to comply. *Id.* at 804-05. This determination is left to the sound discretion of the trial courts. *Id.* at 805 (holding whether the court's order violated the right against self-incrimination "must be determined initially by the trial court"). As discussed above, the superior court's decision to rule on Faga's specific request was not unreasonable or based on untenable grounds. Accordingly, the superior court did not err by denying Faga's requested relief; specifically, to lift the contempt sanctions and set the case for trial.

Although the superior court did not err by refusing to grant Faga his requested relief—lift the contempt sanctions and set a trial date—Faga has raised significant issues that remain unaddressed by the superior court. This case is exceptionally old and, while we recognize Faga's intransigence in this case, the superior court's failure to take the opportunity to consider and

8

resolve the underlying issues regarding the waivers only prolongs it.  Accordingly, we remand to the superior court for consideration of Faga's underlying concerns regarding the waivers.  *See id.* (the merits of a claim that failure to comply with an order is constitutionally protected must be initially determined by the trial court).

The superior court's order denying Faga's motion to lift his contempt is affirmed, but we remand to the superior court for further proceedings consistent with this opinion.

Lee, J.

We concur:

Johanson, J.P.T.

Maxa, C.J.