# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| KITSAP COUNTY, a political subdivision of the State of Washington, | No. 53668-4-II |
| Respondent, | |
| v. | |
| KITSAP RIFLE AND REVOLVER CLUB, a not-for-profit corporation registered in the State of Washington, and JOHN DOES and JANE ROES I-XX, inclusive, | UNPUBLISHED OPINION |
| Appellants, | |
| and, | |
| IN THE MATTER OF NUISANCE AND UNPERMITTED CONDITIONS LOCATED at One 72-acre parcel identified by Kitsap County Tax Parcel ID No. 362501-4-002-1006 with street address 4900 Seabeck Highway NW, Bremerton, Washington. | |

MAXA, P.J. – The Kitsap Rifle and Revolver Club (Club) appeals the trial court's June 2019 amended contempt order. The contempt sanction in the amended order precluded the Club from operating its shooting range, but stated that the Club could purge the sanction by submitting a complete site development activity permit (SDAP) application for the shooting range property to Kitsap County.

The Club argues that the trial court erred in entering the amended contempt order because the order failed to specify the type of SDAP application required to satisfy the purge condition for the contempt sanction. We hold that the trial court did not abuse its discretion in failing to specify the type of SDAP application required. Accordingly, we affirm the trial court's 2019 amended contempt order.

## FACTS

*Background*

The Club is a nonprofit corporation that has operated a shooting range in Bremerton since its founding in 1926. In 1993, the Club's use of the shooting range was a lawfully established nonconforming use.

In the 1990s, the Club began developing the property on which its shooting range was located. The Club's development work included clearing and excavating wooded or semi-wooded areas, removing vegetation, replacing a water course that ran through a wetland buffer with two 475-foot culverts, and excavating and moving soil. The Club did not obtain permits for any of this work.

In 2011, the County filed a complaint for an injunction, declaratory judgment, and nuisance abatement against the Club. The County argued that the Club's development activities were unlawful because it lacked the necessary permits required under the Kitsap County Code (KCC).

After a bench trial, the trial court concluded that the Club's development activities without permits constituted illegal uses of the Club's property. The court ruled that these illegal uses terminated the nonconforming use of the Club's property as a shooting range. The court

issued a permanent injunction prohibiting the Club from operating as a shooting range until the

County issued conditional use permits for the Club's property.

*Kitsap Rifle* I (2014)

The Club appealed the trial court's ruling that the Club's development activities violated

land use permitting requirements and that these activities terminated the Club's legal

nonconforming use of the property. *Kitsap County v. Kitsap Rifle & Revolver Club*, 184 Wn.

App. 252, 261, 337 P.3d 328 (2014) (*Kitsap Rifle* I). This court noted that "there is no dispute

that the Club's unpermitted development work on the property constituted unlawful uses." *Id.* at

275. The court affirmed the trial court's ruling that the Club's development work violated

County land use permitting requirements. *Id.* at 297-301. However, the court concluded that

termination of the nonconforming use was not the proper remedy. *Id.* at 300-01. As a result, the

court vacated the trial court's injunction prohibiting the Club from operating as a shooting range.

*Id*. at 301. We remanded for the trial court to determine the proper remedies for the Club's

permitting violations under the KCC. *Id.*

*Remand from Kitsap Rifle* I

On remand, the trial court issued an Order Supplementing Judgment on Remand. The

order stated in pertinent part:

> A permanent, mandatory injunction is hereby issued further requiring Defendant to apply for and obtain site development activity permitting to cure violations of KCC Titles 12 and 19 found to exist on the Property in the original Judgment. Defendant's application for permitting shall be submitted to Kitsap County within 180 days of the entry of this final order.

Clerk's Papers (CP) at 45.

The Club did not submit an SDAP application by the deadline or within an additional 90

days allowed by the trial court. As a result, the court entered an order finding the Club in

3

contempt. As a sanction, the court enjoined the Club from operating its shooting facility "until such time that [the Club] obtains permitting in compliance with KCC Titles 12 and 19." CP at 289.

*Kitsap Rifle* III (2018)[1]

The Club appealed the trial court's contempt order to this court. The Club argued, among other things, that the trial court erred in ruling that the Club was required to *obtain* an SDAP.

This court affirmed the trial court's contempt order. *Kitsap County v. Kitsap Rifle*, No. 50011-6-II, slip op. at 2, 22 (Wash. Ct. App. Jan. 30, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2050011-6-II%20Unpublished%20Opinion.pdf (*Kitsap Rifle* III). However, the court held that "the trial court erred in ruling that the Club was required to *obtain* an SDAP (rather than apply for one) in order to purge the contempt because actually obtaining a permit is beyond the Club's control." *Id*. at 2. We remanded for the trial court to address the imposition of a proper purge condition. *Id*. at 22.

*The Club's Efforts to Submit an SDAP Application*

The Club hired Soundview Consultants to generate an estimate and scope of work for submitting a complete SDAP application. In July 2018, the County's Department of Community Development (DCD) met with Soundview to discuss the Club's unpermitted site work and plans for the property. The purpose of the meeting was for the Club to receive DCD guidance on the type of permitting and documentation required to cure its permitting violations. Based on the information Soundview presented at the meeting, DCD determined that an SDAP-Commercial

---

[1] *Kitsap Rifle* II was an appeal of the trial court's prohibition of certain activities at the shooting range on remand from *Kitsap Rifle* I. *Kitsap County v. Kitsap Rifle*, No. 48781-1-II (Wash. Ct. App. Nov. 21, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2048781-1-II%20Order%20Amending.pdf (*Kitsap Rifle* II).

would be required. Soundview memorialized this determination in a July 2018 email to the Club, which stated, "Required Application: Commercial Site Development Activity Permit (SDAP) - Full Drainage Review." CP at 447-48.

In January 2019, the Club attempted to submit an application for an SDAP-Grading 2. Notwithstanding the email sent after the DCD's meeting with the Club's consultant, the Club decided that an SDAP-Grading 2 application was appropriate based on its reading of the 2012 judgment and other facts. The County cancelled the Club's SDAP-Grading 2 submission. The County stated that an application for an SDAP-Commercial permit was required.

*Motion to Revise the 2016 Contempt Order*

In May, the County filed a motion to revise the trial court's 2016 contempt order on remand. The County indicated that it could not come to an agreement with the Club regarding a revised contempt order. The County later filed a proposed order amending the contempt order.

The Club challenged the County's proposed order on two grounds. First, the Club argued that the purge condition should specify the type of SDAP application the Club must submit. The Club claimed that without specification, the County would retain too much control over the purge condition.

Second, the Club argued that the type of SDAP application it must submit was for an SDAP-Grading 2. The Club submitted a document from the County identifying several types of permits. The SDAP-Grading 2 was for grading greater than 500 but less than 5,000 cubic yards. The Club claimed that this SDAP was appropriate because the violations described in the trial court's 2012 judgment involved earth movement less than an aggregate total of 5,000 cubic yards.

In an oral ruling, the court rejected the Club's arguments. The court reasoned:

5

I appreciate your arguments that you would like it to be very specific as to the type of permit that is issued – or applied for I should say; but you're looking at a layperson in that context. I don't know how I would make that decision. I think it needs to be fairly simplistic; that the Club just needs to apply for a permit, whatever the Club believes is appropriate; and then the County says this doesn't comply, or it does, and you go through the process.

. . . .

I don't believe that I can identify what kind of a permit it needs to be.

RP at 5, 12.

In June, the trial court entered the County's proposed order. The court's Order Amending December 2, 2016 Contempt Order states:

2. Defendant [the Club] is enjoined from operating a shooting facility until such time that: (a) [The Club] submits a complete site development activity permit ("SDAP") application to Kitsap County for permitting to cure violations of KCC Titles 12 and 19 found to exist on the Property in the original Judgment (hereafter "Purge Condition");

. . . .

For purposes of this order, to submit a "complete" SDAP application means to transmit through the County's online portal an SDAP application that contains each and every one of the items listed in KCC § 21.04.160(B).[2]

CP at 454-55.

The Club appeals the trial court's 2019 amended contempt order.[3]

## ANALYSIS

The Club argues that the trial court erred by failing to specify the type of SDAP application required to satisfy the purge condition in the 2019 amended contempt order because,

---

[2] KCC § 21.04.160(B) provides that a project permit application includes, among other things, a "completed original project application form" and "[p]ermit-specific information required by submittal checklists distributed by the department in accordance with this section, or other relevant sections of Kitsap County Code."

[3] The Club also filed a motion to terminate the contempt sanction, which the trial court denied. The motion to terminate is the subject of a separate appeal.

without that specification, (1) the Club is unable to comply with the purge condition because compliance depends on the County's discretion to decide what application is required, and (2) the purge condition is not reasonably related to the cause or nature of the contempt. We disagree.

A.     REMEDIAL CONTEMPT SANCTIONS

Chapter 7.21 RCW provides courts with the authority to impose sanctions on a person for contempt of court. Contempt of court includes the "intentional . . . [d]isobedience of any lawful judgment, decree, order, or process of the court." RCW 7.21.010(1)(b). The person subject to contempt is referred to as the "contemnor."

The contempt statutes distinguish between remedial (or civil) sanctions and punitive (or criminal) sanctions for contempt of court. *In re Interest of Silva*, 166 Wn.2d 133, 141, 206 P.3d 1240 (2009). Remedial sanctions are "imposed for the purpose of coercing performance when the contempt consists of the omission or refusal to perform an act that is yet in the person's power to perform." RCW 7.21.010(3). Punitive sanctions are imposed to punish past contempt of court to uphold the court's authority. RCW 7.21.010(2).

Under RCW 7.21.030(2)[4], a court may find a person in contempt of court and impose a remedial sanction "[i]f the court finds that the person has failed or refused to perform an act that is yet within the person's power to perform." The court may impose one or more of several listed sanctions, including "[a]n order designed to ensure compliance with a prior order of the court." RCW 7.21.030(2)(c). A sanction in a civil contempt proceeding that is punitive rather than coercive is invalid. *In re Det. of Faga*, 8 Wn. App. 2d 896, 900, 437 P.3d 741 (2019).

---

[4] RCW 7.21.030 has been amended since the events of this case transpired. Because these amendments do not impact the statutory language relied on by this court, we refer to the current statute.

To qualify as remedial, a contempt sanction must satisfy three requirements. First, a contempt order must contain a purge condition allowing the contemnor to purge the contempt by committing an affirmative act. *Id.* The existence of a purge condition shows that the sanction has a coercive effect. *Silva*, 166 Wn.2d at 142.

Second, the contemnor must have the ability to satisfy the purge condition. *Faga*, 8 Wn. App. 2d at 900-01. A sanction becomes punitive when the contemnor cannot purge the contempt. *In re Rapid Settlements, Ltd.*, 189 Wn. App. 584, 613, 359 P.3d 823 (2015). "When a contemnor cannot control whether to purge the contempt because purging the contempt is dependent on the actions of third parties, outside of the contemnor's control, the purge condition is inappropriate." *Faga*, 8 Wn. App. 2d at 902.

Third, if the purge condition involves something other than complying with the original order that the contemnor violated, the condition must be " 'reasonably related to the cause or nature' " of the contempt. *Rapid Settlements*, 189 Wn. App. at 614 (quoting *In re Interest of M.B.*, 101 Wn. App. 425, 450, 3 P.3d 780 (2000)).

We review for abuse of discretion the trial court's fashioning of a purge condition. *See Faga*, 8 Wn. App. 2d at 900; *see also M.B.*, 101 Wn. App. at 4554. An abuse of discretion is present only if there is a clear showing that the court's exercise of discretion was manifestly unreasonable or based on untenable grounds or reasons. *Id.*

B.      VALIDITY OF PURGE CONDITION

1.   Ability to Satisfy Purge Condition

The Club relies on the general rule, stated above, that a purge condition is inappropriate "[w]hen a contemnor cannot control whether to purge the contempt because purging the contempt is dependent on the actions of third parties, outside of the contemnor's control." *Faga*,

8 Wn. App. 2d at 902. The Club argues that because the trial court failed to specify the type of SDAP application required to satisfy the purge condition, the County has unchecked discretion to decide what application is required. Therefore, purging the contempt is outside the Club's control. We disagree.

The County does have the authority to determine the type of permit the Club is required to submit. KCC 12.10.010 states, "All proposed site development activities shall be reviewed by the Kitsap County department of community development to determine the permits required." But this fact does not mean that the Club is unable to satisfy the purge condition.

First, the County apparently made an administrative determination in July 2018 that the required application is for an SDAP-Commercial. Therefore, the Club's ability to comply with the purge condition no longer depends on the County's discretion; the Club can satisfy the purge condition by submitting an application for an SDAP-Commercial. The fact that the Club chose instead to submit a SDAP-Grading 2 application does not render the purge condition invalid.

Second, the Club is not without a remedy for what it believes is the County's erroneous determination that a commercial SDAP is required. The Club is free to resubmit an application for a SDAP-Grading 2. If the County again rejects that application, the Club may be able to file an administrative appeal of that decision.[5] Alternatively, as the County points out, the Club could file a motion with the trial court to terminate the contempt sanction on the grounds that it submitted the appropriate application. The Club could argue that it had submitted a "complete"

---

[5] The Club claims that a rejection of a SDAP-Grading 2 application would not be an appealable final decision. On the other hand, the County states that the Club could appeal a denial of its application to the Hearings Examiner. Whether an appeal would be possible is beyond the scope of this appeal.

SDAP application as required in the 2019 amended order.  The trial court then would be in a position to address what application was required.

2.    Trial Court Authority to Specify Type of Permit

The Club assumes that the trial court had the authority to specify the type of SDAP application required to satisfy the purge condition.  But the Club presents no argument and cites no authority to support this assumption.  The trial court was not necessarily in a position to dictate the County's exercise of its administrative authority.  Under the KCC, the County – not the trial court – determines what permit is needed.  KCC 12.10.010.

3.    Factual Basis for Trial Court to Specify Type of Permit

The Club argues that the trial court was able to specify the type of SDAP application required to satisfy the purge condition based on the existing record.  We disagree.

Even if the trial court had the authority to determine what permit was required, the evidence available to the court was insufficient to make this determination.  The Club argues that an SDAP Grading-2 was appropriate because (1) the trial court found in the 2012 judgment that it had moved more than 500 but less than 5,000 feet of earth; and (2) the County's documents describing various permits stated that the SDAP-Grading 2 was for grading greater than 500 but less than 5,000 cubic yards.

However, the trial court's findings in the 2012 judgment were based on the minimum amounts of earth movement needed to trigger permitting requirements.  The court made no findings regarding the actual amount of earth moved.  Instead, the court found that the Club moved *far more than* certain amounts totaling well over 500 cubic yards.  The 2012 findings did not provide a basis for the trial court to determine the type of permit required.

In addition, the Club's violation of permitting requirements was not limited to earth movement. In the 2012 judgment, the trial court also found that the Club's unpermitted installation of two culverts that emptied into a wetland and the Club's earth movement within a wetland buffer were illegal uses of the Club's property. The evidence does not indicate whether these activities triggered the need for an SDAP-Commercial.

In addition, the County's position is that its determination that an SDAP-Commercial was required was based on information that the Club's consultant provided. But the information the consultant provided is not in the record.

### 4. Summary

The standard of review for the trial court's fashioning of a purge condition is abuse of discretion. *See Faga*, 8 Wn. App. 2d at 900. Based on the considerations discussed above, we conclude that the trial court did not abuse its discretion by failing to specify the type of SDAP application required to satisfy the purge condition in the 2019 amended contempt order.

## C. RELATIONSHIP OF PURGE CONDITION TO THE CONTEMPT

The Club argues that because the trial court failed to specify that an SDAP-Grading 2 application was required, the purge condition was not reasonably related to the cause or nature of the Club's contempt. We disagree.

The Club relies on the general rule, stated above, that if the purge condition involves something other than complying with the original order that the contemnor violated, the condition must be " 'reasonably related to the cause or nature' " of the contempt. *Rapid Settlements*, 189 Wn. App. at 614 (quoting *M.B.*, 101 Wn. App. at 450). The Club claims that the purge condition with an unspecified type of application involves something other than complying with the order that the Club violated.

11

The trial court found the Club in contempt in 2016 for failing to submit an SDAP application within the court's deadline. As a sanction, the 2019 amended order enjoined the Club from operating its shooting facility until the Club submitted a complete SDAP application "for permitting to cure violations of KCC Titles 12 and 19 found to exist on the Property in the original Judgment." CP at 454.

The trial court's purge condition was directly related to the Club's contempt. The contempt involved the failure to file an SDAP application, and the purge condition required the submission of an SDAP application. Therefore, the general rule upon which the Club relies does not apply here and we reject the Club's argument.

## CONCLUSION

We affirm the trial court's 2019 amended contempt order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

MELNICK, J.

CRUSER, J.