IN RE the MARRIAGE OF Gaylon LARSEN and
Emiliann Larsen: STATE EX REL. Emiliann LAR-
SEN, Plaintiff-Respondent,

v.

Gaylon LARSEN: Respondent-Appellant-Petitioner.

Supreme Court

*No. 90–1194. Argued October 29, 1991.—Decided January 8,
1992.*

(Also reported in 478 N.W.2d 18.)

For the respondent-appellant-petitioner there was a brief and oral argument by *Donald T. Lang,* assistant state public defender.

For the plaintiff-respondent there was a brief and oral argument by *Howard W. Cameron, Jr.* and *Barron County Family Support Agency,* Barron.

LOUIS J. CECI, J. This case is before the court on petition for review of a published decision of the court of appeals, *In re Marriage of Larsen,* 159 Wis. 2d 672, 465 N.W.2d 225 (Ct. App. 1990). The court of appeals affirmed an order by the circuit court for Barron County, James C. Eaton, Circuit Judge, finding Gaylon Larsen (Larsen) in contempt for failure to make child support payments and committing Larsen to the Barron County jail for 90 days. The circuit court order also granted Larsen an opportunity to stay the jail commitment and purge the contempt if he would seek work and undergo treatment for Post Traumatic Stress Disorder (PTSD).

The court of appeals affirmed the order, rejecting Larsen's arguments that the circuit court exceeded its authority and violated his constitutional right to due process by ordering inpatient treatment as a purge condition. Because we find the purge condition within the circuit court's authority and not contrary to Larsen's due process rights, we affirm the decision of the court of appeals.

The facts are as follows. Gaylon F. Larsen and Emiliann Larsen were divorced in 1984. Since that time, Larsen has been found in contempt for nonpayment of child support twice, including the contempt at issue here. Two other times Larsen has had contempt proceedings brought against him, once for not paying child support and once for not complying with a seek-work order. Three times the court had to reduce the level of Larsen's support payments due to his inability to pay. In total, after the divorce in 1984, Larsen had been in circuit court six times for hearings relative to child support.

Larsen is a Vietnam War veteran and has been diagnosed as having PTSD. He has had difficulty finding and maintaining employment, due in great part to

681

PTSD. In one of the prior contempt proceedings, the circuit court had ordered Larsen, pursuant to a stipulation by the parties, to continue the PTSD counseling program he had entered. Larsen apparently refused to comply with that order, because by the time of the contempt at issue here, he was no longer receiving treatment.

On September 7, 1989, an order to show cause was served on Larsen, seeking a finding of contempt for his nonpayment of child support and noncompliance with a seek-work order. At the hearing, Larsen argued, and the court agreed, that his inability to find a job was directly related to his PTSD. The court found that PTSD was "most probably" Larsen's "major problem" and that he would "never obtain employment until this problem [was] taken care of . . .." The court specifically found that the PTSD interfered with the way Larsen presented himself for employment and that he refused treatment for PTSD. Larsen was clearly "on edge," and "his tenor, tone and deportment indicate[d] that he [was] simply one bitter guy . . .." Finally, the court found that if it simply left things as they were, nothing would get better.

Therefore, the court concluded that Larsen was in contempt under sec. 785.01(1)(b), Stats. The remedial sanction imposed was a 90-day commitment to the Barron County jail under sec. 785.04(1)(b), Stats. As noted above, the court granted conditions whereby the commitment could be stayed and the contempt purged if Larsen would agree to receive treatment for PTSD and seek work.

■

Larsen did not appeal the finding of contempt, the 90-day jail commitment, or the seek-work purge condition. He only appealed the PTSD treatment purge condition. Whether the circuit court's granting of the purge

condition exceeded the court's authority or violated Larsen's due process rights are both questions of law. We review questions of law without deference to the decisions of the lower courts. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984).

At the outset, we note that Larsen, the state (on behalf of Emiliann Larsen), and the court of appeals have all interpreted the contested purge condition as requiring inpatient treatment for PTSD. The relevant part of the order states that "Gaylon F. Larsen shall, on or before January 20, 1990, notify the Veterans Administration that he is ready, willing and able to follow through on the program established for treatment of Post Traumatic Stress Syndrome including inpatient treatment." We do not read that phrase, or the order in its entirety, as requiring inpatient treatment. Under the order's wording, the treatment program could be inpatient or outpatient. A search of the record does not reveal whether Judge Eaton intended that the treatment be inpatient or outpatient. The record also does not reveal the level of intrusiveness of inpatient treatment for PTSD or how substantially Larsen's liberty would be infringed upon by the inpatient treatment program.

Larsen urges us to find that the purge condition granted to him by the circuit court is tantamount to an involuntary commitment under ch. 51, Stats. He argues that he has the right to receive all the due process safeguards afforded under ch. 51. The state's brief concedes that if we find the purge condition tantamount to an involuntary commitment, then Larsen must be awarded the due process safeguards of ch. 51.

Under the facts of this case, we do not find the circuit court's granting of the purge condition tantamount to an involuntary commitment under ch. 51. Civil

contempt is remedial or coercive, *i.e.*, designed to enforce a private right of a party in an action. *State v. King,* 82 Wis. 2d 124, 130, 262 N.W.2d 80 (1978). The private right that the court was enforcing here was Emiliann Larsen's right to receive child support payments. The court had attempted to enforce that right in the past, with minimal success.

This case is distinguishable from *Contempt In Interest of J.S.,* 137 Wis. 2d 217, 404 N.W.2d 79 (Ct. App. 1987). In *J.S.,* a parent (C.S.) in a child in need of protection or services proceeding agreed to enter an inpatient program at a drug treatment center. The juvenile court entered an order to that effect. C.S. left the facility without completing the program. This was followed by a number of repeated instances in which the juvenile court ordered C.S. back to the facility, followed by C.S. again leaving the facility without completing the program. The juvenile court finally found C.S. in contempt and ordered her to enter the treatment program. The order directed that " 'during those periods that [C.S.] is not in the said program, she shall be committed to the Racine County Jail for up to six months or for as long as her contempt continues, whichever is shorter.' " *J.S.,* 137 Wis. 2d at 220. The court of appeals reversed the order on the grounds that the court could not order treatment for C.S. without a ch. 51, Stats., hearing.

In contrast to *J.S.,* here Larsen had been ordered to jail, not to a treatment program. The treatment was only a purge condition, exercisable at Larsen's will. In like manner to *J.S.,* the circuit court here could not have ordered inpatient treatment as a remedial sanction without a ch. 51, Stats., hearing. *See Lessard v. Schmidt,* 349 F. Supp. 1078 (E.D. Wis. 1972). However, allowing Larsen to seek treatment for PTSD as an opportunity to

purge his contempt, without a ch. 51 hearing, did not violate his right to due process.

Due process is what process is due under the circumstances. Civil contempt may be purged by the contemnor's complying with the court order which led to the contempt. *King,* 82 Wis. 2d at 130. Circuit courts are not otherwise required to grant purge conditions.[1] However, we agree with the court of appeals that it is within the circuit court's inherent authority to grant purge conditions which allow contemnors to purge their contempt outside of complying with the court order which led to the contempt. *Larsen,* 159 Wis. 2d at 676.

If a circuit court grants a purge condition, the purge condition should serve remedial aims, the contemnor should be able to fulfill the proposed purge, and the condition should be reasonably related to the cause or nature of the contempt.

The purge condition at issue here falls well within these parameters. PTSD has been Larsen's major problem in complying with the circuit court's orders. The purge condition is, therefore, reasonably related to the cause of the contempt. Treatment for PTSD would help to remedy Larsen's noncompliance. Larsen is able to fulfill the purge condition by "notify[ing] the Veterans Administration that he is ready, willing and able to follow through on the program established for treatment of

---

[1]At one time, the statutes required that civil contempt sentences be purgeable. *See* sec. 295.02(4), Stats. 1975. The current statutes do not contain such a requirement other than the provision that a person may be imprisoned for civil contempt "only so long as the person is committing the contempt of court or 6 months, whichever is the shorter period." Section 785.04(1)(b), Stats.

Post Traumatic Stress Syndrome including inpatient treatment."

*By the Court.*—The decision of the court of appeals is affirmed.