

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of )
)  No. 75259-6-I
DARREL RILEY, )
        Appellant, )  DIVISION ONE
)
and )  UNPUBLISHED OPINION
)
SUZETTE RILEY, )
)
        Respondent. )  FILED: August 21, 2017

TRICKEY, J. — Darrel Riley's parenting plan established a residential schedule for his two daughters, Arianna and Madeleine.[1] Under the plan, his two daughters were to reside with their mother, Suzette Riley, the majority of the time. Darrel appeals the trial court's order finding him in contempt for noncompliance with the parenting plan and imposing various remedial sanctions based on that contempt finding.

We conclude that the trial court did not err by finding Darrel in contempt. Arianna's recalcitrance did not excuse Darrel's noncompliance because Darrel did not make reasonable efforts to overcome her resistance to living with Suzette. We also conclude that the trial court did not exercise its inherent contempt powers.

Instead, we conclude that it exercised its statutory contempt authority after making the appropriate finding that certain, specific, statutorily prescribed sanctions would not be effective. As to the specific sanctions the court imposed,

---

[1] We refer to all members of the Riley family by their first names in order to avoid confusion.

we conclude that they do not amount to a modification of the parenting plan and were not abuses of the court's discretion. Therefore, we affirm.

## FACTS

In January 2010, Darrel and Suzette separated after being married for decades. They have two daughters, Arianna and Madeleine, who were 10 years old and 7 years old, respectively, at the time of the separation. Working with a mediator, Darrel and Suzette agreed to a parenting plan in 2011.

In May 2015, on Suzette's petition, the court entered a modified parenting plan, noting that Darrel's abusive use of conflict created the danger of serious damage to the children's psychological development. The modified plan provides that both daughters shall reside with Suzette during the week and reside with Darrel or Suzette on alternating weekends; the girls shall share one meal or activity with Darrel between his weekend visits; and, no matter which parent they are staying with, have "reasonable, unmonitored telephone and email access to either parent or any extended family members."[2]

The plan gives Suzette sole decision-making authority for most major decisions and prohibits both parents from discussing the legal proceedings with the children. It also orders the parents to "cooperate and support both children to be engaged in therapy."[3] The plan requires the parties to submit disagreements to a case manager, but preserves the right to superior court review of all disputes.

In August 2015, Arianna left Suzette's home and moved in with Darrel full time. In October 2015, with Arianna's assistance, Madeleine also left Suzette's

---

[2] Clerk's Papers (CP) at 28-29.
[3] CP at 33.

home to live with Darrel.

In April 2016, Suzette obtained an order of contempt against Darrel for failing to abide by the modified parenting plan. Both daughters had little to no contact with Suzette between their moves and the time she brought the motion for contempt.

Darrel asserted that the children are opposed to returning to live with Suzette, and that "it would not work to force them, in particular Madeleine, to return."[4] The case manager appointed by the court reported that Darrel "does not believe that either Arianna or Madeleine should return to their mother's home."[5] The case manager also reported that Darrel supported Arianna's "extreme position" of estrangement from Suzette and Madeleine's refusal to work through her problems with her mother.[6]

The court found that Darrel had failed to comply with the residential schedule in bad faith, repeatedly discussed the ongoing litigation with his children, and intentionally failed to follow the case manager's recommendations that he support Madeleine's return to counseling. The court ordered sanctions, including that (1) the daughters have makeup residential time with Suzette, during which Darrel could not have any contact with his daughters; (2) the family participate in a Family Bridges workshop, with the cost split between Suzette and Darrel; and (3) after the workshop, both parents comply with the recommendations of any aftercare professionals.

---

[4] CP at 1790.
[5] CP at 1803.
[6] CP at 1804-05.

3

The court provided that, once Suzette's makeup time concluded, it would determine "the conditions, timing and nature of resumption of contact between the children" and Darrel.[7] It also allowed Darrel to purge his contempt by complying with the contempt order, the parenting plan, and all of the case manager's recommendations.

Darrel appeals.[8]

## ANALYSIS

### Contempt

Darrel argues that the trial court erred by finding him in contempt for violating the residential parenting plan's provision regarding Arianna's living arrangements because he did not have the ability to comply.[9] Specifically, Darrel argues that he could not overcome Arianna's resistance to living with Suzette. We conclude that the contempt finding is appropriate based on Darrel's failure to make reasonable efforts to abide by the parenting plan.

When a parent fails to comply with a residential parenting plan in bad faith, the court shall find the parent in contempt of court. RCW 26.09.160(2)(b). For purposes of determining whether the court should find a parent in contempt, "the parent shall be deemed to have the present ability to comply with the order

---

[7] CP at 707.

[8] Darrel moves this court to strike all references in Suzette's response brief and supplemental designation of clerk's papers that relates to events occurring after the court's contempt order. Because the Court of Appeals considers only evidence that was before the trial court at the time a decision was made, we will not consider those events. See RAP 9.1; 9.11. Accordingly, we disregard several pages of Suzette's statement of the case in her response brief and numerous clerk's papers.

[9] It does not appear that Darrel is challenging the finding of contempt with respect to Madeleine's living arrangements.

4

establishing residential provisions unless he or she establishes otherwise by a preponderance of the evidence." RCW 26.09.160(4). A noncomplying parent bears the burden of showing that he "lacked the ability to comply with the residential provisions of a court-ordered parenting plan or had a reasonable excuse for noncompliance." In re Marriage of Rideout, 150 Wn.2d 337, 352-53, 77 P.3d 1174 (2003).

"[W]here a child resists court-ordered residential time and where the evidence establishes that a parent either contributes to the child's attitude *or* fails to make reasonable efforts to require the child to comply with the parenting plan and a court-ordered residential time, such parent may be deemed to have acted in 'bad faith' for the purposes of RCW 26.09.160(1)." Rideout, 150 Wn.2d at 356-57 (emphasis added).

An appellate court reviews whether the trial court's findings of fact on contempt are supported by substantial evidence. Rideout, 150 Wn.2d at 352. "Substantial evidence is that which is sufficient to persuade a fair-minded person of the truth of the matter asserted." In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). Unchallenged findings of fact are verities on appeal. See Rideout, 150 Wn.2d at 353.

Here, the court found Darrel in contempt for failing to abide by the residential parenting plan. It is undisputed that Arianna was living with Darrel when, under the parenting plan, she should have been residing with Suzette. Therefore, Darrel was not complying with the parenting plan. To avoid contempt, Darrel had to show by a preponderance of the evidence that, because of Arianna's recalcitrance, he

was unable to comply with the parenting plan or that the court should excuse his noncompliance.

The trial court found that Darrel refused to comply with the plan in bad faith and noted that he was not making reasonable efforts to comply. Specifically, the court found that the fact that Arianna and Madeleine had lived with Darrel since they moved out of Suzette's house, rather than on their own, was "evidence that the[ir] father could have caused the children to follow the residential schedule."[10] The court also found that Darrel's "statements that he was complying with the parenting plan by merely taking his children to [Suzette's] door and not making additional efforts to encourage his children to reside with their mother or encourage his children to attend *counseling further evidence[d] his lack of efforts to comply with the parenting plan*."[11] Both findings demonstrate that Darrel did not carry his burden of showing that he made reasonable efforts to comply with the parenting plan.

Darrel does not challenge any of the trial court's findings of facts, therefore, they are verities. Additionally, Darrel stated in his declaration that Suzette "has the responsibility to get the kids to obey the court order, as she has the sole decision making" authority.[12] That belief strongly implies that Darrel did not understand that he had an obligation to make good faith efforts to comply with the plan. Thus, Darrel's own statements, combined with the court's unchallenged findings about his actions, provide substantial evidence to support the court's determination that

---

[10] CP at 703.
[11] CP at 703 (emphasis added).
[12] CP at 279.

6

Darrel failed to comply with the parenting plan in bad faith.

Darrel appears to believe that his noncompliance is excused if he establishes that his reasonable efforts would have been futile. But that is not the standard articulated in <u>Rideout</u>, as quoted above. Darrel was obligated to make reasonable efforts to require his children to reside with Suzette, even if he believed those efforts would not be successful. We will not disturb the trial court's finding that Darrel did not fulfill that obligation.[13]

### Authority to Sanction

Darrel argues that the trial court erred because it relied on its inherent sanctioning authority before exhausting its statutorily granted contempt power.[14] Because the general civil contempt statute grants the trial court broad discretion to fashion remedial sanctions when it makes a finding that specific statutorily prescribed sanctions will be ineffectual, as it did here, we disagree.

If a court finds that a parent has failed to comply with provisions of an order establishing a residential parenting plan in bad faith, the court "shall find the parent in contempt of court." RCW 26.09.160(2)(b). The court must then order the

---

[13] Suzette and Darrel also dispute whether there is enough evidence in the record to show that Darrel was the source of Arianna's resistance to living with Suzette. Because we conclude that substantial evidence supports the court's finding that Darrel did not make reasonable efforts to require Arianna to live with Suzette, we do not reach this question.

[14] For the first time in his reply brief, Darrel argues that the trial court lacked the authority to impose sanctions under the general contempt statute, RCW 7.21.030, because it should have used only the specific contempt statute for violations of the residential parenting plan provisions, RCW 26.09.160. We do not consider this argument because Darrel is raising it too late and because it directly conflicts with arguments he made in his opening brief. <u>Cowiche Canyon Conservancy v. Bosley</u>, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); <u>see, e.g.</u>, Br. of Appellant at 13-14.

Moreover, RCW 26.09.160(6) explicitly states that the court's authority to impose remedial sanctions under the statute is "in addition to any other contempt power the court may possess." Suzette sought sanctions under both statutes. CP at 60.

7

noncomplying parent to "provide the moving party additional time with the child," "pay . . . all court costs and reasonable attorneys' fees incurred as a result of the noncompliance," and "a civil penalty" of at least $100. RCW 26.09.160(2)(b)(i)-(iii). These powers are in addition to "any other contempt power the court may possess." RCW 26.09.160(6).

Those other contempt powers include a general statutory power to impose remedial sanctions for contempt. See RCW 7.21.030(2). The statute authorizes the court to imprison the contemnor, order the contemnor to pay a forfeiture of up to $2,000 per day while the contempt continues, issue an "order designed to ensure compliance with a prior order of the court," and impose "[a]ny other remedial sanction . . . if the court expressly finds that those sanctions would be ineffectual to terminate a continuing contempt of court." RCW 7.21.030(2)(a)-(d).

An appellate court reviews the trial court's authority to impose sanctions de novo as a matter of law.[15] In re Interest of Silva, 166 Wn.2d 133, 140, 206 P.3d 1240 (2009).

Here, the trial court imposed sanctions on Darrel under both the general contempt statute and the specific contempt statute for parents who fail to comply with an order establishing residential provisions. It expressly found that "the remedial sanctions set forth in RCW 26.09.160 and RCW 7.21.030, on their own, will be ineffectual to terminate [Darrel's] continuing contempt of court."[16] That is

_____

[15] Suzette argues that the appropriate standard of review is an abuse of discretion. As discussed below, this court reviews the trial court's choice of which sanctions to impose for an abuse of discretion, but that is a different question than whether the trial court lacked the authority to impose sanctions.
[16] CP at 705.

8

exactly the finding the statute requires before the court may impose sanctions under RCW 7.21.030(d).

Darrel argues that the trial court had to try to coerce compliance by imprisoning him or fining him $2,000 a day before it could impose other sanctions. He relies on Silva, which established that a court must "try all statutory contempt sanctions and specifically find them ineffective" before it exercises its inherent authority. 166 Wn.2d at 144. But Silva is inapposite because it applies only to the court's inherent contempt power, which "is separate from statutorily granted contempt power." 166 Wn.2d at 141. Nothing in the trial court's order indicates that it relied on its inherent authority. And Darrel does not cite any authority to support his argument that the trial court must try all statutory sanctions before exercising its statutory authority to design sanctions that are tailored to the facts before it.

Accordingly, we conclude that the trial court had the legal authority to order these sanctions.

## Sanctions

Darrel argues that, even if the trial court had the authority to impose these sanctions, the trial court nevertheless abused its discretion by imposing remedial sanctions that amounted to a modification of the parenting plan, were not in the best interests of the children, and were not supported by necessary findings. Because the sanctions were designed to coerce Darrel to comply with the trial court's order and related to his contemptuous behavior, we disagree.

As quoted above, the trial court has broad powers to issue orders "designed

9

to ensure compliance with a prior order" and fashion any other remedial sanction when it finds that the statutorily prescribed sanctions will be ineffectual. RCW 7.21.030(2)(c), (d). A "remedial sanction" is "a sanction imposed for the purpose of coercing performance when the contempt consists of the omission or refusal to perform an act that is yet in the person's power to perform." RCW 7.21.010(3).

The contemnor must be able to purge contempt by performing affirmative acts. In re Dependency of A.K., 162 Wn.2d 632, 646, 174 P.3d 11 (2007). When the trial "'court grants a purge condition, the purge condition should serve remedial aims, the contemnor should be able to fulfill the proposed purge, and the condition should be *reasonably related to the cause or nature of the contempt*.'" In re Interest of M.B., 101 Wn. App. 425, 449-50, 3 P.3d 780 (2000) (quoting In re Marriage of Larsen, 165 Wis.2d 679, 478 N.W.2d 18, 20-21(1992) (adopting Wisconsin's approach to purge conditions)).

This court reviews the trial court's imposition of sanctions for an abuse of discretion. In re Marriage of James, 79 Wn. App. 436, 439-40, 903 P.2d 470 (1995); see Rhinevault v. Rhinevault, 91 Wn. App. 688, 694, 959 P.2d 687 (1998). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). We address each of Darrel's objections to specific provisions of the contempt order in turn.

*Contact and Visitation*

Darrel argues that the trial court abused its discretion by limiting his visitation time and contact with his children. Specifically, he argues that the order

10

amounted to a modification of the parenting plan, which the court did not support with the required findings of adequate cause. Suzette responds that temporarily and conditionally suspending Darrel's visitation was an appropriate contempt sanction for Darrel's failure to comply with the parenting plan, not a modification of that plan. We agree with Suzette.

When the trial court finds a parent in contempt for failing to comply with the residential provisions of a parenting plan, it must order the noncomplying parent to provide the other parent additional time with the child, to make up the time missed. RCW 26.09.160(2)(b)(i). The trial court may also postpone a parent's "visitation rights indefinitely" if it is a "reasonable means to attempt a reconciliation between" the children and the other parent. In re Marriage of Farr, 87 Wn. App. 177, 185, 940 P.2d 679 (1997).

A modification "occurs when a party's rights are either extended beyond or reduced from those originally intended in the decree." In re Marriage of Christel, 101 Wn. App. 13, 22, 1 P.3d 600 (2000). "Any modification of a parenting plan, 'no matter how slight,' requires the court to conduct an independent inquiry." In re Parentage of Schroeder, 106 Wn. App. 343, 352, 22 P.3d 1280 (2001) (quoting In re Parentage of Smith-Bartlett, 95 Wn. App. 633, 640, 976 P.2d 173 (1999)).

In Farr, the trial court found a father in contempt for failing to comply with a residential schedule and ordered that the older child spend makeup time with the mother. 87 Wn. App. at 182. Initially, the court allowed the father to have "reasonable telephone calls" with the child during that makeup time. Farr, 87 Wn. App. at 182. But, after the father refused to follow the contempt order, the court

11

prohibited the father from having any contact with his children until the older child made up the "lost residential time." Farr, 87 Wn. App. at 184. The father objected, arguing that the sanction amounted to a modification of the parenting plan. Farr, 87 Wn. App. at 185. The Court of Appeals disagreed, holding that the court had acted within its authority. Farr, 87 Wn. App. at 185-86.

Here, the trial court ordered both daughters to make up residential time with Suzette. The court also ordered that Darrel have "no contact whatsoever" with his children during that makeup time. Rather than have Darrel's contact and visitation with his children resume immediately after the makeup time concluded, the trial court ordered that Darrel's visitation would be supervised and reduced, and announced that it would determine the "conditions, timing and nature of the resumption of contact."[17] The court clarified that it would base its determination on the "cooperation of the children and the father with [the contempt order], with the Family Bridges program . . ., and with the Case Manager and after-care professional."[18]

These sanctions are clearly intended to coerce Darrel's compliance with the contempt order and the parenting plan. The restrictions on Darrel's contact with the children are conditional and designed to be temporary. Thus, they do not amount to a modification of the parenting plan. We conclude that the trial court did not abuse its discretion by ordering them.

Darrel argues that it is unfair to condition his resumption of visitation on his children's cooperation with the aftercare professionals and progress in the

---

[17] CP at 707.
[18] CP at 707.

12

program. Darrel's argument would be persuasive if the court were conditioning Darrel's ability to purge his contempt on his daughters' progress in the Family Bridges program. But the restrictions on Darrel's visitation with his daughters are part of the contempt sanctions and, therefore, remain in place only while Darrel remains in contempt. They are reasonable sanctions based on the court's finding that Darrel contributed to his daughters' attitudes toward Suzette.

Darrel also argues that the court abused its discretion by conditioning his resumption of contact with his daughters on the opinions of the case manager and aftercare professionals. Relying on Schroeder, he contends that the order amounts to a modification because it allows the case manager to prevent him from resuming contact with his daughters. See 106 Wn. App. at 352-53 (holding that a trial court modified a parenting plan by allowing a guardian ad litem (GAL) to set the visitation calendar without providing an opportunity for review by the court).

As described above, the contempt order is not a modification of the parenting plan. Further, Schroeder is distinguishable because, here, the court reserved the right to review the case manager's and aftercare professionals' recommendations. The trial court may allow a professional it has appointed as arbitrator to "suspend visitation as long as the parties have the right of court review." Kirshenbaum v. Kirshenbaum, 84 Wn. App. 798, 807, 929 P.2d 1204 (1997).

In sum, we conclude that the trial court did not abuse its discretion by limiting Darrel's contact with his daughters while Darrel remained in contempt of court.

*Courtroom Appearance*

Darrel argues that the trial court acted contrary to Arianna's and Madeleine's best interests when it ordered them to be brought into court to hear that they were ordered to participate in the Family Bridges workshop, and then had them transported directly from court to the workshop. But Darrel does not seek any specific relief for the claimed error. Accordingly, this issue is moot and we will not review it. See State v. Hunley, 175 Wn.2d 901, 907, 287 P.3d 584 (2012).

*Family Bridges*

Darrel argues that the trial court abused its discretion by ordering Arianna and Madeleine to participate in the Family Bridges workshop program because it is not accredited or affiliated with any educational institution. Suzette argues that the trial court did not abuse its discretion because she provided the court with data showing that Family Bridges has had a history of success. We agree with Suzette.

Here, the court authorized Suzette to enroll her daughters in Family Bridges and any "follow-up workshops or necessary meetings to assist the children in living with [Suzette] and overcoming their estrangement."[19] The court also ordered that the "parties shall comply with any and all recommendations from any aftercare professional or therapist working with the family after the Family Bridges [w]orkshop."[20]

Darrel does not dispute that Suzette's relationships with Arianna and Madeleine were extremely strained. The trial court found that Darrel's bad faith contributed to that estrangement and alienation. Therefore, it was reasonable for

---

[19] CP at 706.
[20] CP at 706.

14

the court to require Darrel to participate in, and encourage his daughters to participate in, a program designed to repair Arianna's and Madeleine's relationships with Suzette and help them work toward reunification.

The court's approval of the Family Bridges workshop program specifically, at Suzette's request, was also reasonable. Suzette provided the court with numerous articles describing in detail the methods of the Family Bridges program and similar programs. The materials show that Family Bridges has been operating for at least 20 years and has documented its success with follow-up studies. Thus, the court had a reasonable basis to order the parties' participation in Family Bridges and did not abuse its discretion.

Darrel argues that Family Bridges "was outside the range of acceptable choices" because the individuals who run the Family Bridges program are not well-qualified, the program operates at secret locations, and because neither the case manager nor the GAL specifically recommended this program.[21] In light of the evidence Suzette provided to the court demonstrating the efficacy of Family Bridges, Darrel's argument is not persuasive.

*Family Bridges Expense*

Darrel argues that the trial court lacked the authority to require him to reimburse Suzette for 50 percent of the cost of the Family Bridges program because it did not make findings that the cost was a reasonable and necessary extracurricular expense. Suzette argues that the trial court did not abuse its discretion because this was a proper remedial sanction, not a part of Darrel's child

---

[21] Br. of Appellant at 27, 30.

15

support obligation.[22] We agree with Suzette.

Here, the trial court ordered Darrel to reimburse Suzette for 50 percent of the cost of the Family Bridges workshop. Darrel's share of the cost was approximately $20,000. Although this is a substantial cost, we conclude that the order is a remedial sanction. This provision was included with other contempt sanctions, including a $200 per day civil penalty for any days that the children resided with Darrel and a $100 penalty for each occasion that Darrel did not make Madeleine available for a scheduled counseling appointment. Nothing in the order suggests that the trial court imposed the cost as anything but a remedial sanction.

Accordingly, we conclude that it was not an abuse of discretion for the court to order Darrel to reimburse Suzette for half of the program's cost.

Darrel never addresses whether an order that he reimburse Suzette for the cost of Family Bridges would be a proper remedial sanction. Instead, Darrel's entire argument against this part of the order assumes that the order is part of his child support obligation. Before ordering support that exceeds the basic child support obligation, "the trial court must determine that additional amounts are reasonable and necessary." In re Marriage of Aiken, 194 Wn. App. 159, 172, 374 P.3d 265 (2016). But Darrel cites no authority holding that this rule applies to a remedial sanction for failure to comply with a parenting plan. Accordingly, we reject Darrel's argument that the trial court lacked the authority to impose this sanction because it did not make necessary findings.

---

[22] Suzette also argues that the trial court could have ordered Darrel to reimburse her for half of this expense under the child support order because it was an educational expense. Because we conclude that the order was an appropriate sanction, we do not reach this issue.

## Attorney Fees

Suzette requests attorney fees under RCW 26.09.160(2)(b)(ii), which entitles the party who moved for contempt because of noncompliance with a parenting plan to "an award of attorney fees on appeal to the extent the fees relate to the issue of contempt." Rideout, 150 Wn.2d at 358-59 (citing Schroeder, 106 Wn. App. at 353-54). We award attorney fees to Suzette under RCW 26.09.160(2)(b)(ii) because this appeal relates to Suzette's original motion for contempt. Our award for fees under this statute is without regard to the financial status or need of the parties.

We affirm.

Trickey, J

WE CONCUR:

Cox, J.

17