**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**April 30, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1399**

STATE OF WISCONSIN

Cir. Ct. No. 2022FA842

IN COURT OF APPEALS
DISTRICT II

IN RE THE MARRIAGE OF:

TIMOTHY DAVID REEVES,

PETITIONER-RESPONDENT,

V.

MOONDETTE MOSCOSO REEVES,

RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Kenosha County: FRANK M. GAGLIARDI, Judge. *Affirmed in part, reversed in part and cause remanded with directions*.

¶1 LAZAR, J.[1] Moondette Moscoso Reeves appeals from orders of the circuit court finding her in contempt of court, setting certain purge conditions, and denying her request for adjournment of a purge review hearing. This court affirms the circuit court's orders in all respects—including the finding of contempt and the requirement that she make certain payments to Timothy David Reeves[2] to purge the contempt—except insofar as they purport to restrict Moondette's ability to "disseminat[e] … disparaging remarks on social media or to any third party about the other party, attorneys, or past and present employees of the court." On that purge condition (and only that purge condition), this court agrees with Moondette that the circuit court erroneously exercised its discretion by imposing a purge condition unrelated to Moondette's contemptuous conduct of refusing to make court-ordered payments to her ex-husband.

## Background

¶2 Moondette and Timothy were divorced on November 29, 2023, after four years of marriage.[3] Moondette was ordered to pay Timothy a total of $24,209.54, which included reimbursements and attorney's fees related to earlier contempt findings as well as an equalization payment, by January 3, 2024.[4] On

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(h) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

[2] For ease of reference, this court will refer to the parties by their first names.

[3] The Honorable Bruce E. Schroeder presided over the trial and the Honorable Randy R. Koschnick entered the Findings of Fact, Conclusions of Law, and Judgment of Divorce.

[4] Due to Moondette's "object[ion] to the content of the [document] submitted by [Timothy]'s counsel," the circuit court conducted a hearing on December 20, 2023, and determined that the document in question accurately reflected the court's November 29 decision after trial. Thus, the court signed its Findings of Fact, Conclusions of Law, and Judgment of Divorce on December 20, 2023. The document ordered Moondette to pay "within fourteen (14) days from the date of the Decision," making her payment due on January 3, 2024.

January 31, Timothy sought an order to show cause why Moondette should not be found in contempt, alleging that she had paid nothing.

¶3  At a March 21, 2024 hearing Moondette argued that her failure to pay was not contemptuous because it was not willful, asserting that she did not have the financial means to comply with the order.  She testified that she earned $30 per hour at her full-time job, plus some overtime.  On cross-examination, she disclosed that she also had a second job, working approximately twelve hours per week and earning $28 per hour.  She testified that her monthly earnings are less than her monthly expenses, which included $1,000 for credit cards, $1,223 for her daughter's private high school, and $876 for her daughter's car payment.  Moondette testified, however, that she could pay up to $500 per month toward her court-ordered obligations.

¶4  The circuit court did "not find [Moondette] credible at all," stating its impression was that she was "telling [the court] whatever is convenient[]" rather than being truthful.  Noting contradictions in her testimony regarding her income, her "unreal" decision to spend on things like a car payment for her eighteen-year-old daughter rather than "taking care of [her] obligations," and her admission that she could afford up to $500 per month but had paid nothing, the court concluded that Moondette had "willfully and intentionally violated the court orders."  It held her in contempt and imposed a penalty of 120 days in jail if Moondette failed to comply with the purge condition of making monthly payments of $900 on her debt to Timothy.[5]

---

[5] The circuit court also added Timothy's fees and costs associated with bringing the motion to show cause (totaling $3,075) to the amount Moondette owed Timothy.

¶5    After the circuit court set that condition, Timothy's counsel brought up another issue, stating:

> And there's not an existing motion on this and I briefly mentioned it to counsel. But I can tell the Court what my client was looking to have addressed is that there continues to be a lot of social media posts from [Moondette] about my client, about this process, [and] about the judges that have handled this case.

After counsel confirmed that these alleged posts were "[a]bout the courts as well," the court imposed an additional purge condition:

> Here's the other condition that we're going to put into this purge condition, is that there will be … no dissemination to a third party about and disparaging remarks about the – – either party in this action, any attorney involved in this action, any court employee including the prior court judge or myself, in any social media or anything to a third party. If he has so much as a post that he has a screen shot of and he brings it back, that will be considered a violation, even if you continue to pay.

¶6    The circuit court signed an order memorializing these purge conditions on April 18. The condition related to Moondette's speech was written as follows:

> There shall be no dissemination or disparaging remarks on social media or to any third party about the other party, attorneys, or past and present employees of the court.

¶7    On May 10, 2024, Timothy filed a request for a purge review hearing, alleging that Moondette had "failed to make full payment towards the Court Ordered action items" and "violated the provision on making disparaging remarks about a party, the court process and court officials." The circuit court set a hearing for June 4. On May 29, Moondette filed a letter with the court seeking

adjournment of that hearing on the grounds that she had only received notice of the hearing by mail on May 28, she was not adequately represented by counsel,[6] and she was unable to take time off work without two weeks' notice. The court denied this request on June 3.

¶8    Moondette did not appear at the June 4 purge review hearing.[7] Timothy's counsel asserted that Moondette had paid only $270 since the March 21 hearing and that she had posted online something in a language other than English "calling [Timothy] names" and saying that her freedom of speech was being "prevent[ed]." Although the circuit court did not take a position on these allegedly disparaging remarks due to lack of a certified translation, it stated that the order not to make disparaging remarks would be a continuing purge order. It then found Moondette's nonparticipation in the hearing and failure to make the court-ordered payments to Timothy "willful" and ordered her to pay $3,600 by noon on June 7 or report directly to jail to serve a 120-day commitment, entering a commitment order to that effect. Moondette timely made this payment, and the court ordered a stay of its June 4 commitment order.

¶9    Moondette appeals the orders of the circuit court finding her in contempt for nonpayment, setting the purge condition related to disparaging remarks, and denying her request for adjournment of the June 4 purge review hearing.

---

[6] Moondette asserted that her attorney had not informed her of the hearing date and had been "unresponsive."

[7] The circuit court noted its attempt to call Moondette to give her the opportunity to be heard by phone.

**Discussion**

¶10 As relevant here, contempt is "intentional … [d]isobedience, resistance or obstruction of the authority, process or order of a court." WIS. STAT. § 785.01(1)(b). This court reviews a circuit court's use of its contempt power for an erroneous exercise of discretion, meaning that it will uphold the circuit court's decision if it reflects a reasonable conclusion based on a logical interpretation of the facts, application of the proper legal standard, and a rational process. *Benn v. Benn*, 230 Wis. 2d 301, 308, 602 N.W.2d 65 (Ct. App. 1999). Factual findings relating to contempt will be upheld unless they are clearly erroneous. *See Kaminsky v. Milwaukee Acceptance Corp.*, 39 Wis. 2d 741, 746-47, 750, 159 N.W.2d 643 (1968). The burden is on the potential contemnor to explain her failure to comply with a court order. *Id.* at 747.

¶11 The sanctions a circuit court may impose after finding a party in contempt have been set by the legislature and are reflected in WIS. STAT. § 785.04(1).[8] *See Frisch v. Henrichs*, 2007 WI 102, ¶¶ 33, 35, 304 Wis. 2d 1, 736 N.W.2d 85. These sanctions are "imposed for the purpose of terminating a continuing contempt of court," WIS. STAT. § 785.01(3), and include payment of money to compensate an injured party, imprisonment for up to six months (so long as the person is continuing the contempt), and a sanction other than these if the court "expressly finds that those sanctions would be ineffectual," § 785.04(1)(a), (b), (e).

---

[8] Only remedial sanctions are relevant here; Moondette was not prosecuted by a district attorney or other prosecutor such that punitive sanctions have any bearing on the issues before this court. *See* WIS. STAT. §§ 785.04(2); 785.03(1)(b).

¶12    Finally, if a contemnor does not purge contempt by complying with the court order that led to the contempt, a circuit court has "inherent authority to grant purge conditions which allow contemnors to purge their contempt"—and avoid sanction—another way. *Larsen v. Larsen*, 165 Wis. 2d 679, 685, 478 N.W.2d 18 (1992); *State ex rel. V.J.H. v. C.A.B.*, 163 Wis. 2d 833, 845, 472 N.W.2d 839 (Ct. App. 1991). The Wisconsin Supreme Court has held that "[i]f a circuit court grants [such] a purge condition, the purge condition should serve remedial aims, the contemnor should be able to fulfill the proposed purge, and the condition should be reasonably related to the cause or nature of the contempt." *Larsen*, 165 Wis. 2d at 685. Whether a circuit court exceeds its authority in setting a purge condition is a question of law that this court reviews de novo. *Id.* at 682-83.

### A.    The March 21, 2024 Order Finding Moondette in Contempt and Setting a Financial Purge Condition

¶13    Moondette's first argument with respect to the first order on appeal—the March 21, 2024 order finding her in contempt for failure to make the court-ordered payment to Timothy that was part of her judgment of divorce—is that it was "contrary to the evidence" and lacked a sufficient basis for the finding that her noncompliance was willful rather than the result of her inability to pay. Based on Moondette's own testimony on March 21, this court disagrees.

¶14    It was Moondette's burden to establish that her failure to comply was not willful. *See Kaminsky*, 39 Wis. 2d at 746-47. Far from doing that, her contradictory and, as the circuit court put it, "all over the place" testimony at the show cause hearing established that Moondette had two jobs that together provided her with an income of close to $100,000 per year. Moondette also admitted to spending more than $876 per month on a car payment for her teenage

daughter, which was included in her monthly bills totaling $5,681. This court cannot conclude that the circuit court illogically interpreted that particular expenditure as "unreal" in light of the admitted fact that Moondette had paid exactly none of her court-ordered debt as of the hearing date.

¶15 As always, "the [circuit] court is in the best position to evaluate the credibility" of witnesses, given that it has the opportunity to observe a witness's demeanor and "look for any other indicia of reliability or the lack thereof." *State v. Carnemolla*, 229 Wis. 2d 648, 661, 600 N.W.2d 236 (Ct. App. 1999). Here, the court simply did not believe that Moondette would have complied with the court order to pay Timothy if she could have. The court explicitly stated that it found her incredible and willing to disregard the truth in favor of saying whatever she thought was convenient. Contrary to Moondette's argument, the court's finding that she did not have a "bunch of money just sitting around" as of March 21, 2024, was in no way inconsistent with its finding that her failure to make the payment required by her divorce (which was due months earlier) was willful; the court noted Moondette's testimony that she had given her daughter money, sent money overseas, and put money into college funds, all of which could have depleted whatever cash she had available when she was initially ordered to make payment.

¶16 Given her various admissions of other expenditures and apparent lack of candor about her income, this court cannot conclude that the circuit court's finding of willful noncompliance was clearly erroneous. After Moondette testified that she could afford to pay up to $500 per month, the circuit court found that she could afford to pay $900 per month, saying, "[I]f you can pay $870 or $80 a month for your kid's car, you can pay $900 a month to your husband until you're

fully paid off." Moondette has not established that this finding is clearly erroneous either.[9] Thus, the financial purge condition of $900 monthly payments set by the court was appropriate. It served the remedial aim of Timothy getting the money to which he was entitled pursuant to the judgment of divorce, it was related to the nonpayment that led to Moondette being found in contempt, and Moondette could fulfill the purge—she held the "key to the jail house door." *See Frisch*, 304 Wis. 2d 1, ¶60; *Larsen*, 165 Wis. 2d at 685.

**B.      The Speech-Related Purge Condition of the March 21, 2024 Order**

¶17     The second issue raised by Moondette on appeal relates to the purge condition prohibiting her from making "disparaging remarks on social media or to any third party about the other party, attorneys, or past and present employees of the court." Moondette argues that this purge condition violates her constitutional right to free speech, is unrelated to the cause or nature of the contempt finding, and, given that there was no mention of disparaging remarks or a request to prohibit Moondette's speech in Timothy's request for an order to show cause, was imposed without giving her fair and proper notice.

¶18     Setting aside the issue of whether this broad order could survive scrutiny under the First Amendment[10]—on its face, it would prohibit Moondette from saying *anything* negative about her ex-husband, any attorney involved in the case, and any court official to *any* third party, even a friend or therapist, for

---

[9] Again, this court rejects Moondette's argument that the circuit court's statement that Moondette was "going to struggle to be able to pay that" contradicted this finding. The court's comment was made in response to Timothy's request that Moondette be ordered to make payments over and above $900 per month.

[10] U.S. CONST. amend. I.

example—this court concludes that it must be reversed for the simple reason that, as Moondette asserts, it is not arguably related to the conduct for which Moondette was held in contempt.

¶19 Under our supreme court's holding in **Larsen**, a purge condition "should be reasonably related to the cause or nature of the contempt." 165 Wis. 2d at 685. The circuit court did not explain how this condition prohibiting disparaging remarks related to Moondette's failure to make court-ordered payments to Timothy, which was the conduct that led to its finding of contempt. In defending the condition on appeal, Timothy only vaguely argues that "Moondette refusing to comply with orders and cooperate with the process is the very root of the problem" such that "[a]dding a purge condition to restrict the disparaging remarks and to protect the court and the people involved is reasonably related to the cause of contempt." This court does not see the connection and concludes that there is insufficient nexus between the purge condition and the contemptuous conduct. Thus, the orders of the circuit court are reversed only insofar as they relate to this purge condition prohibiting certain speech from Moondette to third parties; on remand, the court should modify the orders accordingly.

## C.    The June 4 Hearing and Commitment Order

¶20 Moondette's final argument on appeal is that the circuit court's denial of her request to adjourn the June 4, 2024 purge review hearing was "erroneous" and that its finding that her failure to appear was willful and intentional was contrary to the evidence. As such, Moondette argues, the court's decision to issue a commitment order as a contempt sanction should be reversed. This court disagrees and affirms the June 4 order.

10

¶21 A party does not automatically have a right to a continuance; the decision to grant or deny a continuance is left to the discretion of the circuit court and will be set aside only if there is no reasonable basis for the decision. *See Rechsteiner v. Hazelden*, 2008 WI 97, ¶92, 313 Wis. 2d 542, 753 N.W.2d 496. In deciding whether to grant a continuance, a court should consider, among other factors, the convenience to the parties and the court and whether the delay seems to be for legitimate reasons. *Id.*, ¶93.

¶22 In this case, Moondette had originally been ordered to pay the $24,209.54 to Timothy—much of which was awarded to him based on her prior contempt—on November 29, 2023. She paid nothing before the March 21, 2024 show cause hearing, and when found in contempt for that and ordered to pay $900 per month as discussed above, she again failed to comply. Her tactics obviously created significant inconvenience for Timothy and the circuit court. Given her history of evasiveness and noncooperation, not to mention her rejection of the circuit court's invitation to appear by phone, the court could reasonably determine that her request for delay was not for a legitimate reason. Thus, this court concludes it was well within the circuit court's discretion to deny Moondette's request for adjournment. This court affirms the June 4 order except insofar as it repeats the purge condition related to Moondette's speech, as discussed above.

*By the Court.*—Orders affirmed in part, reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

11